McDonald vs. Bryant, Garnishee, etc.

McDonald, Appellant, vs. Bryant, Garnishee, etc., Respondent.

*November 9 — December 4, 1888.*

*(1)  Contracts: Modification: Part performance: Apportionment: Waiver of complete performance.  (2) Reference: Compensation of referee: Stipulation.*

1. By the terms of a written contract the defendants were to cut and haul to their saw-mill all the down timber and slashings on lands of the garnishee and manufacture the same into timber and shingles, and for all lumber so manufactured and safely piled in their mill-yard the garnishee was to pay them $6 per thousand feet.  Defendants cut and hauled a large quantity of logs and put them in their pond, but, before any of them were sawed into lumber, their mill was burned.  *Held:*

    (1) A finding of the trial court that the contract had not been modified so that the defendants should be paid a certain sum for getting out and hauling the logs, irrespective of sawing them into lumber, is sustained by the evidence, although it appears that the garnishee had made advances to aid in getting out the logs.

    (2) The contract was entire, and there could be no recovery *quantum meruit* for its part performance in getting out the logs.

    (3) The fact that the garnishee took possession of the logs more than a year after the defendants had abandoned them and were insolvent, does not show a waiver of complete performance of the contract.

2. Under a stipulation in a garnishment proceeding "that the referee herein on the trial of the issue against the garnishee shall receive $10 per day for his services as such referee, in lieu of any and all other fees or perquisites," it is *held* that the *per diem* compensation of the referee was not limited to the time actually occupied by the trial itself.

APPEAL from the Circuit Court for *Langlade* County. Garnishment.  The principal facts are stated in the opinion.  The plaintiff appeals from a judgment in favor of the garnishee.

Before the commencement of the trial the parties entered into the following stipulation: "It is hereby stipulated and

agreed by and between the plaintiff and garnishee above named that the referee herein on the trial of the issue against the garnishee shall receive $10 per day for his services as such referee, in lieu of any and all other fees or perquisites, and that the amount of such fees may be taxed as disbursements in this case." The trial occupied seven days. Upon the taxation of costs the garnishee sought to tax the compensation of the referee for ten days, and the plaintiff objected to the allowance for more than seven days. The clerk taxed for ten days and, on motion for review, this taxation was affirmed by the court. The affidavits on behalf of the plaintiff set forth that in the negotiations concerning the referee's fees two propositions were made, (1) that the referee should have a *per diem* of $5 and charge both for trial and for making up the report, and (2) that the *per diem* should be $10 *for trial only*, and that to cover all charges; and that the latter was agreed upon and inserted in the stipulation.

For the appellant there were briefs by *Colman & Sutherland*, and oral argument by *Elihu Colman*. They contended, *inter alia*, that the garnishee had waived the conditions of the written contract as to the logging (1) by agreeing to advance money on the logging, (2) by making payments on the same, and (3) by taking possession of the logs. The conditions of a written contract may be waived by parol. Bishop on Cont. ch. 29; *Barton v. Gray*, 57 Mich. 622; *Delaney v. Linder*, 22 Neb. 274; *Ruege v. Gates*, 71 Wis. 634; 13 Pick. 446; *Cummings v. Arnold*, 3 Met. 488, 37 Am. Dec. 155; *Emerson v. Slater*, 22 How. 28; *Kennebec Co. v. Augusta Ins. & B. Co.* 6 Gray, 204; *Deshazo v. Lewis*, 24 Am. Dec. 769. Payment on contract is a waiver of agreement to pay only on completion, and a waiver of the contract. *Keller v. Oberreich*, 67 Wis. 282; *Woodworth v. Hammond*, 19 Neb. 215; *Aldrich v. Price*, 57 Iowa, 151; *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis.

McDonald vs. Bryant, Garnishee, etc.

224; *Button v. Russell*, 55 Mich. 478; *McFadden v. Wetherbee*, 29 N. W. Rep. (Mich.), 881. Possession of the logs by the garnishee is a waiver of the contract, and estops him from setting up the original contract. *Jones v. Pashby*, 35 N. W. Rep. (Mich.), 152; *Young v. Hunter*, 6 N. Y. 203. The logs being in the possession of the garnishee at the commencement of the garnishee action, he would be liable under secs. 2752–2768, R. S., and plaintiff could recover on *quantum meruit* even if there were no special contract as to the price per thousand. *Taylor v. Williams*, 6 Wis. 363; *Pickett v. School Dist.* 25 id. 559; *Trowbridge v. Barrett*, 30 id. 661; *Bishop v. Price*, 24 id. 480; *Hayward v. Leonard*, 7 Pick. 180. A party having voluntarily taken a benefit under work done by another must respond *quantum meruit*. 2 Parsons on Cont. 523; *Dermott v. Jones*, 2 Wall. 1; 23 How. 220. Equity will interpose in behalf of the plaintiff in this action. The proceeding is an equitable one. *First Nat. Bank v. Knowles*, 67 Wis. 373. An intention that the compensation should depend on full performance ought to be clearly expressed. 2 Suth. on Dam. 469; *Leonard v. Dyer*, 26 Conn. 177. The defendants were excused from full performance because prevented by an act of God, their mill having been burned without fault on their part. *Chase v. Barrett*, 4 Paige, 148.

For the respondent there was a brief by *Lynch & McCarthy*, and oral argument by *Thos. Lynch*.

ORTON, J. The appellant commenced an action against the defendants, Miller & Neff, and finally obtained judgment therein for the sum of $2,585.11, and in the mean time garnished the respondent, who took issue by denying all liability to the defendants, and the issue was submitted to John E. Martin, Esq., as a referee, for trial. In February, 1885, it appears, the firm of Miller & Wright owned a steam saw-mill, and the respondent garnishee owned pine-

lands in the vicinity, and they commenced a series of business transactions in respect mostly to logs and lumber advances and payments; and in May of that year Wright sold out his interest in the partnership property and business to E. M. Neff, who assumed all of his liabilities and contracts as a member of the firm. From that time Miller & Neff continued business transactions with the respondent, and to operate the steam saw-mill. The mill was run by the firm until January, 1886, and afterwards by Neff alone until July, when it was burned.

On hearing the evidence the referee stated an account between the defendants and respondent, with various appropriate findings which need not be specially noticed, and made the sum total of the defendants' account $21,575.56, and the sum total of the respondent's account of payments, etc., $19,502.11. On motion of the respondent the circuit court modified the report of the referee, and found that two large items of the defendants' account were not chargeable to the respondent garnishee. These two items deducted from the defendants' account, the defendants owe the respondent a balance of $3,116.31, instead of the respondent owing the defendants a balance of $2,073.45, as found by the referee, so that these two items only need to be considered.

The first one of $4,200, allowed to the defendants, arises from a certain written contract between the respondent and Miller & Wright, by their names, Mathew Miller and N. S. Wright, and under seal, dated February 25, 1885, by which Miller & Wright were to cut and haul to their saw-mill all the down timber and pine slashings on certain lands of the respondent, and all the slashings and windfalls that he might buy on other land, *and to manufacture the same into lumber and shingles* as the respondent might from time to time direct. For all the shingles of the grade of " Star A Star," which they should manufacture and de-

liver on the railroad track, and branded as directed, the respondent was to pay them $1.50 per thousand, payable monthly, but not more than fifty cents per thousand per day; *and for all the lumber so manufactured by the defendants out of said timber and mill, and safely piled in their mill-yard, the respondent was to pay them $6 per thousand feet.* All the timber not sawed into lumber, and that would not make shingles of the above grade, should belong to the defendants. The firm of Miller & Wright, and afterwards of Miller & Neff, made shingles of a large amount, and received payment therefor as charged in the mutual accounts and adjusted by the referee, and they cut and hauled, and put into their pond, 1,400,000 feet of logs to be sawed in their mill; but before any of them were sawed into lumber the mill was burned. In the mean time the respondent made advances to the defendants to aid them in getting out the logs, which were charged and adjusted in said accounts. In respect to these logs there was the principal controversy in the case. The defendants claimed that the written contract above set out had been modified and changed by subsequent agreement, to the effect that they should be paid at the rate of $3 per thousand for getting out and hauling the logs, irrespective of sawing them into lumber. On this question the parties and other witnesses testified, and the respondent unqualifiedly denied that any such change of the written contract had ever been made, or that it had ever been changed in any respect whatever. It is contended that the circumstances confirm this claim of the defendants and their testimony in that behalf, such as the payment from time to time of different sums somewhat proportionate to the logs so got out at the rate of $3 per thousand. But this is explained by the respondent that the defendants were short of means, and asked for advances on the contract, which were made as a mere favor, and that no price per thousand for getting out

the logs was ever fixed or talked about, and that he was careful and endeavored not to make advances to exceed what would be safe on the whole contract. The referee found that the written contract had been so changed, and charged the respondent for getting out and hauling 1,400,000 feet of logs at $3 per thousand, making the sum of $4,200. The circuit court found otherwise, and that the written contract was entire, and not apportionable, and had never been changed or modified. We have examined the evidence, and we are inclined to agree with the circuit court on the question as an original proposition. It is a question, however, on conflict of evidence, and to some extent of credibility, and in such case we ought not to disturb the finding of the circuit court unless there is a very clear preponderance of the evidence against it, and such, in our opinion, is not the case. This pretext of a change of the written contract in this respect appears much like an afterthought to meet the new conditions caused by the burning of the saw-mill.

But in case the written contract had not been so changed, the learned counsel of the appellant contends that the contract itself is such that in equity it may be apportioned and the plaintiff recover for its part performance in getting out the logs, on the basis of a *quantum meruit*. If there ever was an *entire* contract, or one could be made, it is this one. It is only " after all the lumber [is] so manufactured by the [defendants] out of said timber and mill, and safely piled in [their] mill-yard," that the respondent " agrees to pay the [defendants] the sum of $6 per thousand feet." It is impossible to apportion it without making a new contract for the parties. The logs are left in the defendants' pond, and at great expense have to be taken to some other mill to be manufactured, or sold at great loss where they are, and it seems that such expense would likely exceed the entire contract price. The manufacture of the logs into lum-

ber is the important and material stipulation of the contract, and its piling safely in the mill-yard is the event on which depended the payment of $6 per thousand feet, or the condition of such payment. We think it can be said that but for these conditions, the sawing and piling, the contract would not have been made. There can be no doubt that the plaintiff's right to recover anything on this contract depends upon its full performance according to its terms. *Warren v. Bean*, 6 Wis. 120; *Jennings v. Lyons*, 39 Wis. 553; *Koplitz v. Powell*, 56 Wis. 671; *Cook v. McCabe*, 53 Wis. 250; *Hoffman v. King*, 70 Wis. 372; *Keller v. Oberreich*, 67 Wis. 282; *Oakley v. Morton*, 11 N. Y. 25. The principle has become elementary, and authorities are not necessary on the question whether this contract is apportionable, for it is utterly impossible to apportion it in the condition in which the logs were left upon this part performance, and by paying any regard to the contract terms of payment.

It is contended that the respondent waived complete performance of the contract by taking possession of the logs. It seems that he took possession of the logs over a year after the defendants had abandoned them and were insolvent. The logs were his property, and he had a right to take possession of them and save himself from loss to some extent if he could.

The other item allowed as a credit to the defendants by the referee, and which was disallowed by the court, was of property mortgaged by Miller & Neff to the respondent to secure $1,500 for money borrowed, and which was taken possession of and sold by the respondent under the mortgage. The property was of the value of $925, and one year's interest of $64.75 was added to this amount by the referee, as if the property had been unlawfully taken or wrongfully converted. This loan and mortgage appear to have been independent of the other dealings between the parties, and

not the subject of their mutual accounts. The referee found that the mortgage had been paid before the property was so taken and sold. The evidence on that question was in conflict, and the circuit court found that nothing whatever had been paid upon it, and that the mortgage debt was still a valid claim against the defendants, and deducted $989.75, the value of the property and said interest, from their charges against the respondent. We think that the circuit court found correctly that the mortgage had not been paid.

There may be some other items of the defendants' account disallowed by the court, but it is unnecessary to consider them, as the two already disposed of make the defendants largely in debt to the respondent. The amount of such indebtedness is not material. It is sufficient for this case that the respondent, as garnishee, is not indebted to the defendants in any sum whatever. We see no reason for revising the allowance by the clerk to the referee.

*By the Court.*— The judgment of the circuit court is affirmed.