The Fuller-Warren Co. vs. Shurts and another.

---

The Fuller-Warren Company, Appellant, vs. Shurts and another, Respondents.

*March 18 — April 7, 1897.*

*Contract: Warranty.*

The plaintiff sent a written proposition to the defendants in which they said, "We herewith give you estimate and specifications for heating your new house; . . . we will furnish and set up one No. 290 furnace . . . complete and ready for use. . . . We guarantee capacity of this furnace, under proper management, to heat all rooms with registers connected with furnace" to a specified temperature, "provided that in the event of failure, we are immediately notified of such failure of said furnace so to heat said rooms. In case of said failure and notice of the same, we shall have the option of making said apparatus heat said rooms as agreed, or to remove the

The Fuller-Warren Co. vs. Shurts and another.

same, we refunding the money paid thereon." The defendant accepted the proposition. *Held,* that it constituted a contract on the part of the plaintiff to furnish a furnace or apparatus suitable for heating defendant's house to the prescribed temperature by a volume of hot air, and its representations constituted an express warranty that it should be suitable and sufficient for that purpose; and that a furnace which was so defective as, when properly used, to send forth noxious coal gas to such an extent as to render the rooms unwholesome and unsuitable for occupancy, is not a suitable one for heating a house, though it may be able to furnish the required degree of heat; and such defect is a good defense to an action to enforce a lien for the price, of which the defendants may avail themselves without taking out and delivering the furnace to the plaintiff.

APPEAL from an judgment of the circuit court for Waukesha county: WARHAM PARKS, Circuit Judge. *Affirmed.*

This was an action to foreclose a mechanic's lien against the dwelling house of the defendant *Ann T. Shurts* and a subsequent incumbrancer of the premises, founded upon a contract, consisting of a proposition and acceptance thereof, to wit:

"Milwaukee, Wis., Sept. 6, 1894.

"Mrs. Ann T. Shurts, Waukesha, Wis.: We herewith give you estimate and specifications for heating your new house on lot 9, block 6, Hadfield's addition, Waukesha, Wis., as follows: We will furnish and set up one No. 290 furnace, inclosed in galvanized iron case, and properly connected to chimney, with good galvanized iron smoke pipe, and to furnish all heating pipes, properly connected to stacks and registers, according to certain specifications, leaving the furnace complete and ready for use, for the sum of $225, with a guaranty of the capacity of the furnace, under proper management, to heat all rooms with registers connected with furnace, on first floor, to 70 degrees F., when temperature outside indicates 20 degrees below zero, and at the same time to heat all rooms on the second floor, connected with the apparatus, to 70 degrees; *provided* that, in the event of

failure, we are immediately notified of such failure of said furnace so to heat said rooms. In case of said failure, and notice of the same, we shall have an option of *making said apparatus heat* said rooms as agreed, or *to remove the same;* we refunding the money paid thereon.

[Signed]         "The Fuller-Warren Company,
                           "By W. H. Bowers."

At the foot was an acceptance, signed by the defendant, as follows, to wit: "The above proposition is satisfactory, and I accept the same.

The plaintiff is a corporation engaged in the business of manufacturing and selling stoves, ranges, furnaces, etc. The defendant, admitting the execution of the contract and guaranty, alleged that said furnace, having been set up, was fully tested, and proved to be entirely unsatisfactory and deficient, and that the plaintiff was notified of the defects and failure to comply with the terms and conditions of the warranty in November, 1894, and that it was turned over to said plaintiff because of said defects and failures; that the plaintiff thereupon took charge of the furnace, and attempted to remedy said defects and make it comply with the warranty, but that it had wholly failed to do so, and that in consequence it then was, and always had been, defective and dangerous, and unfit for use as a furnace, in that it did not properly heat said house, and that by reason of the generation and escape of gases therefrom it had been and was dangerous to the health of the defendant and the members of her family occupying the house; that it had never been accepted, and had been a source of great annoyance and damage, and was absolutely valueless. The answer contained a counterclaim for damages.

At the trial the court found that the contract and guaranty had been executed as stated, and that, upon test of the furnace after it was set up, it proved to be defective and unsatisfactory, under the requirements of the contract, or for

the necessary use for which it was designed, of which the plaintiff had immediate notice; that it attempted to remedy such defects, and during the winter of 1894–1895 attempted to put said furnace and apparatus in proper condition to perform its functions under the agreement, and serve the purpose for which it was designed, but failed to make the same comply with said written guaranty; that it had at all times leaked gas, to such an extent that it was dangerous to the inmates and occupants of the dwelling house, so that the defendant could not use or burn coal therein, but was obliged to burn coke exclusively; and that said furnace became and was a nuisance to said defendant *Shurts*, and to her dwelling house. The court found that the plaintiff was not entitled to payment for said furnace, or to the relief prayed for, and that the complaint should be dismissed, with costs. Judgment was entered accordingly, from which the plaintiff appealed.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *C. F. Fawcett*. They argued, among other things, that the plaintiff's claim was not simply for the price of goods sold, but for an improvement upon real estate, and that the theory of an implied warranty of fitness was not applicable. 1 Parsons, Cont. 589; 1 Benj. Sales, § 108. Neither would the doctrine of implied warranty apply if the contract be deemed one for the manufacture and sale of goods, because it was for certain specified things, and they were in fact furnished. *Milwaukee Boiler Co. v. Duncan,* 87 Wis. 120. Nothing was said in the contract about the kind of fuel for which the furnace was to be adapted. The only unfitness shown was to burn coal,— it was fit to burn coke. The contract was fully performed by furnishing the kind of furnace specified, having the required heating capacity, and by properly setting it up in the house. The defects shown might be ground for some abatement of price or recoupment of damages. To

defeat the action the defendants, not having returned or of-
fered to return the property, must show that it is entirely
worthless, or that they have sustained damages exceeding its
value. *Warder v. Fisher*, 48 Wis. 338, 341.

*D. S. Tullar*, for the respondents.

PINNEY, J. The finding of facts is, we think, supported by
the evidence; and the only question is whether, in view of
the facts found and uncontradicted evidence, there had been
a substantial performance of the contract on the part of the
plaintiff. If not, the plaintiff could not recover. It was
shown that the whole heating apparatus, including the pipes
built in the walls, the registers, and the foundation in brick
and cement, constituted *the complete furnace*, or heating ap-
paratus, described in the contract; and it was claimed that
it could not be taken out without injury to the house, ren-
dering repairs necessary, although the defendant had agreed
to construct the apparatus "so that pipes and boxes could
be removed without disturbing the plaster or defacing the
ceiling." The substance of the transaction was that the
plaintiff proposed to furnish a furnace or apparatus *for heat-
ing the defendant's new house*, and to guarantee that it should
have a certain prescribed heating capacity. It was claimed
that the furnace did not have the stipulated heating capac-
ity, and that it would not heat a part of the upper portion
of the house unless crowded with fuel to such a degree as
to render the rooms on the lower floor uncomfortable, and
that, owing to defective construction or disposition or ar-
rangement of its parts, it generated gas to such an extent
as to render the rooms uncomfortable and unwholesome.
The plaintiff was notified of these defects, and made certain
alterations in order to remedy them, but with the result
that probably the heating capacity of the furnace may have
been improved, but the difficulty in respect to the genera-
tion of gas was really increased, and to such an extent that

it was not possible to use coal for fuel, and the house could be made comfortable only by the use of coke. In March, 1895, the plaintiff drew on the defendant for the amount claimed for the furnace, but the draft was returned unpaid, and on the 27th of the same month it was notified that the furnace was not accepted, and payment would not be made until the plaintiff put it in proper shape, and that the defendant felt that it would be better that the furnace be taken out entirely. The defects in the furnace had in the meantime been the subject of frequent complaints.

It is not material to consider whether there was an implied warranty that the furnace or heating apparatus should be suitable for the purpose intended. The contract imports, in substance, an express undertaking to that effect; and the conduct of the plaintiff, in attempting to remove both of the defects complained of, shows that it so understood it. It was, in substance, a contract to furnish a furnace or apparatus suitable for heating the defendant's house to a prescribed temperature by means of a column of hot air being drawn through the furnace and its pipes and registers into the several rooms of the house. A furnace so defective that, when properly used, the necessary heated column of air drawn through it for heating purposes is necessarily and unavoidably freighted with noxious coal gas, to such an extent as to render the rooms unwholesome and unsuitable for occupancy, is not, in any sense of the word, a furnace or apparatus fit or suitable for heating houses. No intelligent person would understand, from the language employed, that such a furnace or apparatus would meet the fair meaning of the parties, or that it was the subject in respect to which they were contracting. It cannot be fairly said that the defendant has got what she bargained for.

The contract contains, in our judgment, what must be regarded as, in substance, a representation or assertion on the part of the plaintiff, amounting to an *express* warranty,

that the furnace or apparatus specified in the plaintiff's offer, which she accepted, would be suitable "for heating her [your] new house." The language used forbids any possible inference that a furnace having the specified heating capacity, but with the use of which the generation and filling the house with noxious and unwholesome coal gas was an inseparable and necessary incident of its use, was the furnace or heating apparatus contracted for, and a consideration of the law in respect to implied warranties becomes unnecessary. It is a matter of common knowledge that furnaces in use in the Western country are constructed and designed for burning coal for fuel. We cannot indulge in any presumption that the furnace intended may have been one for burning coke.

The defendant properly refused to accept the furnace, and desired that it be taken out entirely, and practically, so far as it was within her power, returned it or tendered it to the plaintiff. The plaintiff had stipulated for such right of removal in case it failed to properly heat the rooms. We do not think that the rule in *Warder v. Fisher*, 48 Wis. 338–341, is applicable, inasmuch as the defendant had done all reasonably within her power to put herself in a proper position to defeat the plaintiff's claim on account of a want of substantial performance of the contract on its part. She was not bound, in order to avail herself of her right of defense, to take out the furnace, and transport and deliver it to the manufacturers, at their place of business in Milwaukee. It was contemplated, if occasion for removing it occurred, that such duty was to rest upon the plaintiff. We hold, therefore, that judgment was rightly given for the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.