# CASES DETERMINED

AT THE

# August Term, 1903.

MANITOWOC STEAM BOILER WORKS, Respondent, vs. MANITOWOC GLUE COMPANY, imp., Appellant.

*November 18—December 11, 1903.*

*Entire contracts: Exceptions: Measure of damages: Sales: Substantial performance: Acceptance:* Prima facie *evidence: Values: Pleading: Amendment to conform to proofs: Appeal and error: Reversal.*

1. In applying the recognized exceptions to the rule, that he who makes an entire contract can recover no compensation unless he performs it entirely and according to its terms, the question is never what will reasonably compensate the contractor, but what can the purchaser pay without being put in worse position than if the contract had been performed.

2. Where plaintiff contracted to manufacture and place in defendant's factory a boiler that should be 150 per cent. of the capacity of the boiler then in use, and the increase of capacity was the vital and essential part of the contract, furnishing a boiler found by the court to be about eighty-two per cent. of the capacity of the old one is in no sense substantial performance of the contract.

3. In an action for the price of a boiler furnished under a contract for a boiler of greater capacity than that actually installed, the evidence reviewed, and *held* insufficient to sustain a finding of acceptance of the boiler furnished.

4. In an action for the price of a boiler furnished under a contract for a boiler of a greater capacity than that actually installed, evidence of mere use of the boiler in connection with defendant's premises, with which it had been connected, is not enough to overcome evidence, in effect, that defendant, upon protesting its insufficiency, conveyed to plaintiff its wish and expectation that it be removed, and that plaintiff fully understood

such election, and allowed the boiler to remain in breach of an agreement to remove it, because of an erroneous construction of the contract.

5. In an action for the price of a boiler furnished under a contract for a boiler of greater capacity than that actually installed, the contract price is not *prima facie* proof of its value.

6. In such case, testimony by defendant's manager, in effect, that if a boiler, such as contracted for, was worth $2,035, the value of such a one as delivered was proportionally less as the capacity, but said, "I can't state the market value of that boiler at the time I received it any more than what Mr. H. (plaintiff's witness) valued it at," cannot be construed into an admission that the market price was as much as H.'s valuation.

7. On the trial of an action for the price of a boiler, the real controversy had been as to the capacity of the boiler. At the close of the trial there was no evidence to support a recovery on the contract, or to support a cause of action *quantum meruit*, but the court nevertheless entered an order that plaintiff might amend its complaint by adding a count *quantum meruit*, and that defendant might answer thereto simply by general denial, and could introduce no other defense. *Held*, error, to be corrected by reversing the judgment and directing a judgment dismissing the complaint.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action to recover the contract price and enforce a lien for supplying a steam boiler to the defendant. The evidence disclosed that the defendant operated a glue factory, requiring a large amount of steam, not only for power, but also for heating and drying; that it had an old tubular boiler, which had been manufactured by the plaintiff, and with which and its use the plaintiff was entirely familiar; that in such situation the parties negotiated for a new boiler, the defendant stating to the plaintiff that the old boiler was inadequate—that it had a commercial rating of about eighty horse power, and that one was needed of about 100 horse power. The plaintiff's manager counseled one still larger, namely, to rate about 125 horse power, as compared with the old one, eighty horse power. The agreement finally reached was that the new one should be substantially of fifty per cent. more ca-

pacity than the old, but was to be of the Scotch type, instead
of the tubular type. Plaintiff constructed a boiler of the
Scotch type, put it in place in a building and upon brick
foundation constructed by the defendant for that purpose.
After it was connected up, it was found disappointing in ca-
pacity, and not up to the old boiler, but was used, in connec-
tion with the old one, to furnish the steam necessary for the
factory, while efforts were made both by plaintiff and de-
fendant to make it work more efficiently. These efforts being
still unsatisfactory, the defendant complained of the boiler
as not satisfying the contract, and, as the defendant's man-
ager testifies, desired to have it taken away. The plaintiff's
manager testifies that thereupon he proposed to have a test
made, and, if it did not satisfy the contract, he would either
take it out and put in a new one, or enlarge it so as to make
it of the necessary capacity. That test was made, the plaintiff
contending that it showed the boiler to satisfy the contract,
the defendant contending that it did not, but meanwhile
using the boiler to supply in part the steam needed to keep
its factory running. The date of this test is not disclosed,
but it was some time in the autumn of 1898, and this suit
was commenced on the 31st day of January, 1899. The de-
fendant's original answer set up by way of defense the fail-
ure to perform the contract, and by way of counterclaim
sought to recover $1,100 which it had paid upon the price
thereof, certain additional expense occasioned by delay in the
delivery of the boiler, and additional expense for wages and
fuel by reason of the necessity of running two boilers. In
the course of the trial defendant announced that it preferred
to stand simply upon its defense that plaintiff had not per-
formed its contract, and therefore asked leave to withdraw
its counterclaims, which was granted by the court. At the
close of the evidence the court made findings to the effect
that the contract was as above stated, and that the boiler put
in, instead of being fifty per cent. greater capacity than the

old one, was about twenty per cent. less capacity, and announced that upon the then state of the pleadings the defendant would be entitled to a judgment dismissing the complaint, but, on the theory that the defendant had offered some evidence of the reasonable value of the boiler and had accepted the same, the court entered an order that the plaintiff might amend its complaint by adding a count in *quantum meruit,* and that the defendant might answer thereto simply by general denial, and could introduce no other defense, and that, when such pleadings were in, the action be postponed to the ensuing term, in order that evidence might be taken upon the new issue. To these orders the defendant took exception. The plaintiff did amend in the manner indicated, and the defendant introduced the only answer permitted— that of a general denial. Thereupon, at the ensuing term, the plaintiff introduced evidence of experts of what it would cost to build such a boiler as that supplied to the defendant. Defendant offered no further evidence, except by way of cross-examination, to show by these experts that the boiler supplied would be worth approximately $1,800 less than a boiler of the capacity found to have been contracted for. Thereupon the court made findings that the plaintiff had substantially performed its contract, except that, instead of a boiler fifty per cent. greater than the old one, it had supplied one of about twenty per cent. less capacity; that defendant had accepted the boiler; and that the reasonable value thereof was the original contract price of $2,035, for which, less the payments, judgment was rendered, from which the defendant brings this appeal.

For the appellant there was a brief by *J. S. Anderson,* attorney, and *Emil Baensch,* of counsel, and oral argument by *Mr. Anderson.*

For the respondent there was a brief by *Markham & Markham* and *O'Connor, Schmitz & Wild,* and oral argument by *A. J. Schmitz.*

DODGE, J.  The result of this action, whereby the defendant is required to pay the full contract price for a boiler of only about one half the capacity or value of that for which it agreed to pay it, is somewhat startling, especially in view of the consideration, understood by both parties, that its only reason for buying a new boiler at all was that the operation of the factory required more steam than the old one could supply.  Before reaching such a result, a court should pause to re-examine the rules of law or processes of reasoning upon which it is based.  If the law warrants it, the force or value of a contract seems to have vanished.  The contractor receives the same compensation for nonperformance as for performance.  The general rule of law is firmly established that he who makes an entire contract can recover no pay unless he performs it entirely and according to its terms.  *Moritz v. Larsen,* 70 Wis. 569, 36 N. W. 331; *Cohn v. Plumer,* 88 Wis. 662, 60 N. W. 1000; *Widman v. Gay,* 104 Wis. 277, 80 N. W. 450.  This general rule has, with considerable hesitation, been relaxed for equitable considerations in certain exceptional situations where it is believed to work hardship: First, in favor of laborers who contract to perform personal services, and without fault of either party fail of complete performance (*Diefenback v. Stark,* 56 Wis. 462, 466, 14 N. W. 621; *Walsh v. Fisher,* 102 Wis. 172, 78 N. W. 437; *Hildebrand v. Am. F. A. Co.* 109 Wis. 171, 85 N. W. 268); secondly, in building contracts, where the contractor constructs something on the land of another which by oversight, but in good-faith effort to perform fails to entirely satisfy the contract, but is so substantially in compliance therewith that the structure fully accomplishes the purpose of that contracted for, and the other party voluntarily accepts the benefit thereof, or where the failure is mere inconsiderable incompleteness, and the expense of completion is easy of ascertainment (*Malbon v. Birney,* 11 Wis. 107; *Fuller-W. Co. v. Shurts,* 95 Wis. 606, 70 N. W. 683; *Williams v. Thrall,* 101 Wis.

337, 76 N. W. 599; *Laycock v. Parker,* 103 Wis. 161, 79
N. W. 327; *John Pritzlaff H. Co. v. Berghoefer,* 103 Wis.
359, 79 N. W. 564; *Taft v. Montague,* 14 Mass. 282; *Smith
v. School Dist.* 20 Conn. 312; *Bozarth v. Dudley,* 44 N. J.
Law, 304; *Smith v. Brady,* 17 N. Y. 173; *Dermott v. Jones,*
2 Wall. 1); and, thirdly, where the contractor supplies an
article different from or inferior to that promised, and the
recipient, having full opportunity to reject without loss or
injury, decides to accept and retain the thing furnished. This
third phase is hardly an exception, for such voluntary ac-
ceptance may well be deemed the making of a new contract to
take and pay reasonably for the article which does not satisfy
the original contract. *Fuller-W. Co. v. Shurts, supra; Will-
iams v. Thrall, supra.* In case of either of these exceptions,
great caution is due in order that the innocent purchaser
shall not suffer. If loss must fall anywhere, it should rest
on him who breaks the contract. As said in *Allen v. Mc-
Kibbin,* 5 Mich. 449, 455, and quoted approvingly in *Walsh
v. Fisher, supra,* "the party in default can never gain by
his default, and the other party can never be permitted to
lose by it." *Bishop v. Price,* 24 Wis. 480. The question,
therefore, in such cases, is never what will reasonably com-
pensate the contractor, but what can the purchaser pay with-
out being put in worse position than if the contract had been
performed? The recovery is *quantum valebat* from the inno-
cent purchaser's point of view.

Proceeding to ascertain how far these principles are appli-
cable to the situation at bar, we are confronted by the fact
that substantial performance of the express contract is wholly
wanting. The finding is that the boiler furnished was about
eighty-two per cent. of the capacity of the old one, instead of
150 per cent., and that the increase of capacity was the vital
and essential part of the contract. This is in no sense sub-
stantial performance. The boiler does not serve at all the
purpose which the larger one would have served, and for

which it was purchased. Defendant can obtain that for
which it contracted, and for which it agreed to pay $2,035,
and which is necessary to the purpose which induced the con-
tract, in only one of two ways: either it can remove this boiler
from its premises at large expense, if plaintiff does not re-
move it, and purchase and put in place another of the re-
quired size; or it can retain it, and put in another of sub-
stantially equal capacity as auxiliary to it, and at a cost
equal to or greater than the original contract price, and prob-
ably necessitating reconstruction of its boiler house. One in
such predicament cannot be said to have received in substance
that for which he contracted. *Malbon v. Birney,* 11 Wis.
107; *Fuller-W. Co. v. Shurts,* 95 Wis. 606, 70 N. W. 683.
Neither do we discover either finding or proof that defend-
ant had accepted the boiler, had decided to keep it, and use
it so far as it will go toward supplying the needed steam.
True, the trial court argues that it would be inequitable to
allow defendant to keep the boiler and pay nothing for it,
but does not find that it has elected to do so. The only find-
ing is that it is not shown by a preponderance of the evidence
that defendant rejected the boiler, or demanded its removal,
though he did protest that it did not satisfy the contract.
The evidence is that defendant never in words ordered plaint-
iff to remove the boiler, but from the testimony of the same
witness (plaintiff's manager) it appears that defendant, at
the time of protesting the insufficiency, did convey to plaint-
iff its wish and expectation that it be removed. That witness
testified that upon such protest he agreed that he would re-
move the boiler if on test it did not come up to contract
requirement. The test was made, the capacity ascertained,
but the plaintiff's contention thereafter was that the contract
was other than it is now found to have been, and for that rea-
son did not remove it. This testimony fully confirms that
of defendant's manager that he desired to have the boiler
removed, and negatives any inference that it remained on

defendant's premises pursuant to an election on its part to keep it. Another important consideration was that defendant's entire pleading was based on the theory of nonacceptance. The answer denied performance of the contract, and sought by counterclaim to recover back the portion of the purchase price paid, and the expenses which must fall on defendant and be lost if the boiler was removed, but did not ask to recover the difference in value between the contract boiler and the actual one, which would be the principal element of damage if the boiler were to be retained. *Boothby v. Scales,* 27 Wis. 626; *Park v. Richardson & B. Co.* 81 Wis. 399, 51 N. W. 572. Doubtless the fact, unexplained, that defendant made use of the boiler, which had been built into its boiler house and connected with the steam pipes in its factory, is an evidentiary circumstance having some tendency to show acceptance, but such conduct is by no means conclusive when a party cannot forego use of the appliance without at the same time giving up the use of his own premises. Thus one whose land has been plowed by another cannot be said to accept that plowing as a service merely because he sows seed and raises a crop on the land. *Smith v. Brady,* 17 N. Y. 188. Nor because a city runs sewerage through filter beds at its sewer outlet does it necessarily accept them. *Madison v. Amer. San. Eng. Co.* 118 Wis. 480, 95 N. W. 1097. Nor because the owner lives in his house, and uses the defective furnace therein, does he necessarily accept the latter. *Williams v. Thrall,* 101 Wis. 337, 76 N. W. 599; *Fuller-W. Co. v. Shurts,* 95 Wis. 606, 70 N. W. 683. Nor because one takes his own logs does he accept the cutting and driving done upon them by another. *McDonald v. Bryant,* 73 Wis. 20, 26, 40 N. W. 665. In *Smith v. School Dist.* 20 Conn. 312, it was held sufficient to negative inference of acceptance of school house that the district had "done nothing to prevent its removal by the builder." See, also, *Bozarth v. Dudley,* 44 N. J. Law, 304. From such considerations it is clear

that the mere use of this boiler in connection with its own premises, with which it had been connected, is not enough to overcome the foregoing evidence that defendant up to the time of the trial had elected not to accept or retain the boiler, but wished it removed, and that plaintiff fully understood such election, and had allowed said boiler to remain in breach of its agreement to remove it, because of an erroneous construction of the contract. Further, at the close of the trial, before the amendments changing the cause of action, no evidence of the value of the boiler, in the sense above defined, had been received in evidence. The trial court seemed to hold that the contract price was *prima facie* proof of the value. We can hardly conceive a more complete solecism than the doctrine that the contract price of a 250 horse power boiler is presumptively the value of one of 140 horse power. If the contract price proves anything, it proves that the actual boiler was not worth $2,035, but some less sum. The suggestion that defendant's manager had testified that the boiler received was worth the contract price is not borne out by the bill of exceptions. A portion thereof, quoted by the trial court in its decision, is so disassociated from its context as to distort its meaning. The witness had testified that, a boiler such as contracted for being worth $2,035, the value of such a one as delivered was proportionately less as the capacity, to wit, about $900, but said, "I can't state the market value of that boiler at the time I received it any more than what Mr. Hess valued it at." Very clearly this is nothing more than that his opinion as to market values is based solely on Mr. Hess' valuation. The court treats it as if he had said, "I can't state that the market value is any more than Hess valued it," which he then construes into an admission that its market price was as much as Hess' valuation, to wit, the contract price. Clearly, the witness testified nothing of the sort.

The result is that at the close of the trial there was no evi-

dence to support a recovery on the contract, and the court should have rendered judgment dismissing the complaint. Neither was there evidence to support a cause of action *quantum meruit,* to accord with which amendment by the court is authorized by sec. 2830, Stats. 1898. True, the court might conceive that acts subsequent to those disclosed by the proofs might take place, and might constitute acceptance; but could that justify an entire change of issues? The real controversy had been as to the capacity of the boiler contracted for. That issue being decided against it, different courses were open both to plaintiff and defendant. The former might decide to take it away and replace it by one up to the contract requirement, as it had promised to do; or perhaps it might enlarge this particular boiler, as suggested by the evidence; or it might take it away entirely, and stand its liability for damages for entire breach of the contract. The defendant might consent to any of these steps, or it might resist them in such a way as to effectively work an acceptance so as to be liable *quantum meruit.* Indeed, so far as the record discloses, these options are still open to the parties, if not foreclosed by the judgment appealed from. What propriety, then, could there be in requiring the parties to join entirely new issues, perhaps involving transactions subsequent to the commencement of this action, and in effect creating new contract relations, which might all properly be tried in a new suit brought for that purpose, to which defendant would have absolute right to set up all its defenses? And especially how can we justify the act of the trial court in depriving defendant of its statutory right to set up all its defenses and counterclaims to the new cause of action thus brought against it? It had not at all waived that right by deciding not to urge some of them against the cause of action which had been on trial. We do not mean to detract from the very broad discretion vested in the trial courts to allow amendments in the course of the trial. If we could discover

that the parties, without protest, had tried out the question
of a liability arising from acceptance of the boiler, we should
probably not disturb the action of the court in causing formal
amendments to enable final judgment upon the issues so
tried; but, as already stated, we find nothing of the sort in
the record.  The circuit judge based the allowance of the·
amendment and his exercise of discretion on a mistaken as-
sumption therefore, namely, that there was evidence with
which such amendment corresponded.  So extraordinary and
unjustifiable an order we must assume that he, in due exer-
cise of discretion, would not have made but for such mistake.
In the absence of such foundation, we must hold it erroneous..
It is an error which can be corrected by reversing the present
judgment and directing that which ought to have been done·
at the time, namely, the rendition of a judgment dismissing.
the complaint, which, of course, will not prejudice an action
outside of the contract sued on in this.

*By the Court.*—Judgment reversed, and cause remanded
with directions to enter judgment dismissing the complaint..