TREGO, Respondent, vs. ROOSEVELT MINING COMPANY, Appellant.

*September 9—September 29, 1908.*

*Sales: Warranty: Evidence: Appeal: Prejudicial error.*

1. In a contract for the erection of a roasting and separating plant for a mining company, a guaranty that the plant would "handle twenty-five tons of mill concentrates from said second parties' mill, providing the same do not carry more than thirty per cent. iron and four per cent. calcium carbonate, in each twenty-four hours of steady running, and that the finished product from the process will not contain more than four per cent. iron," was in substance a warranty that the plant would so operate as to handle the specified quantity of raw ore *in a reasonably proper manner* to accomplish the purpose of the roasting process; and if the plant was so defective in operation as to fail to handle the ore properly and as to waste it, the express warranty was not complied with.

2. In an action to recover a balance of the agreed price of a roasting and separating plant plaintiff should not have been permitted, as a witness in his own behalf, to answer a question as to whether the plant was completed so as to fulfil all the guaranties, since this called for his opinion upon an ultimate issue in the case which was contested and could only be resolved by the jury; and the error was prejudicial where, upon his cross-examination, plaintiff having shown himself incompetent by want of knowledge, the court refused to strike out the testimony, but later in the trial excluded like questions put to defendant's witnesses.

3. Evidence of assays of ore, offered by plaintiff, was not competent to show that the plant complied with the warranty, where it was not shown that the ores assayed were from the mine in question, excepting one sample which was not of the kind and quality specified in the warranty.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

This is an action to recover the balance of the contract price for the erection of a roasting and separating plant for the defendant, the *Roosevelt Mining Company.* The plaint-

iff, in consideration of $6,500, agreed to erect for defendant one complete roasting and separating plant as specified in the contract of sale. The roaster is spoken of as the "Trego" roaster. The contract provided that payment of parts of the contract price should be made at specified times during construction, and that the balance of $1,500 should be paid two weeks after the plant was completed and ready for operation. The purchase price, except $1,500, has been paid, and this action is to recover this balance.

The plaintiff claims that he furnished the roasting and separating plant called for by the contract, and that it fulfilled the conditions of the agreement; and demands the balance of the purchase price. One of the provisions of the contract was:

"Said first party guarantees that this plant will handle twenty-five tons of mill concentrates from said second parties' mill, providing the same do not carry more than thirty per cent. iron and four per cent. calcium carbonate, in each twenty-four hours of steady running, and that the finished product from the process will not contain more than four per cent. iron."

The defendant alleges that the roaster installed by the plaintiff failed to handle the amount of mill concentrates as agreed, and that it did not comply with the agreement for its erection, in that it was wholly unsuitable for the purpose for which it was designed, and alleges damages by way of counterclaim for the amount of money paid the men who were engaged by it while the plant was idle because of its defective operation, and for the value of great quantities of valuable ore which because of the alleged defective construction of the roaster were wasted and scattered through its smokestack. Defendant also asks the recovery of the amount paid on the price of the plant, it being alleged that the plant is worthless and without value.

The evidence adduced showed that the amount sued for

was the balance due on the purchase price.    It also appeared
that the plaintiff had constructed a roasting and separating
plant of the kind specified in the contract, namely, a Trego
roasting furnace, with magnetic separating machine.    These,
with the accompanying appliances, constitute the structures
enumerated in the contract, and were erected, except that the
motor installed was a seven and one-half instead of a ten-
horse power.

The plaintiff was called and examined as a witness in his
own behalf, and among other questions was asked:

"*Q*. There are certain guaranties contained in the con-
tract.    I will ask you whether your plant was completed
so as to fulfil all of those guaranties?    (Objection.    No
proper foundation.    This is asking for a conclusion with-
out stating the groundwork of the information or whether he
knows facts sufficient to show that it complies with the guar-
anty or not.)    Court: I presume you had better let the
question be answered.    (To which ruling defendant ex-
cepted.)    You can cross-examine.    *A*. I did."

Upon cross-examination the following proceeding took
place:

"*Q*. When you state that you complied with the conditions
of the guaranty, you rely on the representations of other peo-
ple, do you not?    *A*. And the chemists; yes, sir.    *Q*. You
didn't know that of your own knowledge?    *A*. No, sir.
Defendant's counsel: Then I ask that his evidence as to this
mill complying with the guaranty be stricken out.    Court:
Well, it has been admitted.    I cannot strike it out of the
mind of the jury.    This statement that it complied with the
guaranty is not a statement made upon actual knowledge, but
he has made that statement.    Let that stand.    It won't hurt
the case at all.    (To which ruling the defendant by its coun-
sel then and there duly excepted.)"

There was no evidence in the case of analyses of mill con-
centrates of the quality specified in the contract which were
furnished to the roaster and analyses of the roasted products
from those mill concentrates.    After the completion of the

plant a test was made of. it and plaintiff thereafter recon-
structed certain parts of it.    There was evidence that the de-
fendant used the plant for some time and that it offered to
give a note for the balance of the purchase price.    No in-
structions to the jury were given or requested upon the issues
submitted to them.    The jury returned a special verdict
finding that the plant would handle the amount of ore speci-
fied in the time named and give a finished product as pro-
vided in the contract, provided the ore furnished was of the
quality specified in the contract.    This is an appeal from
the judgment on the verdict in plaintiff's favor.

   *T. L. Cleary,* for the appellant.

   For the respondent there was a brief by *Kopp & Brunck-
horst,* and oral orgument by *A. W. Kopp.*

   SIEBECKER, J.    The questions submitted in the special
verdict show that the court held that plaintiff's action was to
recover the balance of the purchase price for the roaster
plant specified in the contract of the parties, and that defend-
ant counterclaimed damages for a breach of the agreement
that the plant, when completed, would "handle twenty-five
tons of mill concentrates from said second parties' mill, pro-
viding the same do not carry more than thirty per cent. iron
and four per cent. calcium carbonate, in each twenty-four
hours of steady running, and that the finished product from
the process will not contain more than four per cent. iron."
The trial court correctly held that this agreement amounted
to a warranty that the completed roaster would handle, in
each twenty-four hours of its operation, the specified quan-
tity of the quality of mill concentrates described in the con-
tract, and produce a finished product which would not con-
tain more than four per cent. of iron.    The phraseology of
this agreement imports, in substance, that the roaster would
so operate as to handle this quantity of raw ore in a reason-
ably proper manner to accomplish the purpose of the roast-

ing process. If the plant was so defective in its operation as to fail to properly handle the ore and as to waste it, then the plant cannot be said to comply with the express warranty. *Fuller-Warren Co. v. Shurts,* 95 Wis. 606, 70 N. W. 683. The parties do not question but that plaintiff furnished a "Trego" roasting plant of the kind called for by the contract. It appears that this appliance was one reasonably well known in the mining business and well known to the parties when they contracted. The defendant alleges and claims that the roaster did not comply with the warranty, and seeks to recover damages by way of counterclaim to plaintiff's demand for breach of this express warranty. The issue thus raised was litigated and submitted for determination to the jury by a special verdict. The jury found that the roaster furnished fulfilled the warranty, and judgment was awarded plaintiff of a recovery of the balance due on the contract.

Numerous exceptions to the reception and rejection of evidence are alleged by defendant for reversal of the judgment. As appears in the foregoing statement of the facts, one of the interrogatories propounded to plaintiff while testifying in his own behalf was whether the plant was completed so as to fulfil all of the guaranties. The court permitted an answer to this question over defendant's objection. Defendant's cross-examination of the witness disclosed that plaintiff had no direct knowledge on the subject and relied on information obtained from others. The court denied defendant's motion to strike out the evidence, upon the ground that the effect of its reception could not thereby be removed and that the evidence was harmless. We find no justification in the bases assigned for this ruling. The witness had shown himself to be incompetent by his want of knowledge, even if the interrogatory were a proper one. But it appears that the inquiry called for his opinion upon an ultimate issue in the case which was sharply contested and which could only be resolved by a jury. *Johnson v. Highland,* 124 Wis. 597, 102

N. W. 1085.    Later in the trial defendant propounded like
questions to witnesses called by it, and the court upon objec-
tion ruled against them.    These contradictory rulings would
naturally tend to give emphasis and weight to plaintiff's evi-
dence on the subject and render its reception prejudicial to
the defendant's case.    We are constrained to hold that this
constitutes reversible error in the case.

Another exception urged by defendant is to the evidence
of assays of ore made by the witness Pennington.    It is
claimed that the samples of ore furnished him were not suffi-
ciently identified and that the written reports of his assays
were not the originals.    So far as the record discloses, these
reports contained a statement of the memoranda made by
him as he proceeded in his work and contained original rec-
ords or written statements of the result of his examinations.
The evidence, however, is subject to the other objection
urged, in that it is not shown that, with one exception, the
samples of ores furnished to him or that the samples tested
by him were from the Roosevelt mine, and this one does not
conform to the kind and quality of ore specified in the war-
ranty and which plaintiff guaranteed that the mill would
handle.    Under these circumstances the plaintiff's assays
were not competent as evidence tending to show that the
roaster complied with the warranty, and they should not
have been received for this purpose.

Defendant claimed that plaintiff had failed to comply
with the contract by not furnishing a ten-horse power electric
motor.    The plaintiff testified that only a seven and one-
half horse power motor had been furnished, that this was of
sufficient power, and was what the parties understood he
should furnish.    This matter was not fully explained by
other evidence, and neither party insisted on a determination
of it by either the court or the jury.    Under this state of the
record no question is presented for review.

Since the errors above noted call for a new trial, we need

not consider other exceptions to rulings on evidence which are not likely to arise upon another trial.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.