Wagner-Larscheid Co. v. Fairview Mausoleum Co. 190 Wis. 357.

———————

WAGNER-LARSCHEID COMPANY, Appellant, vs. FAIRVIEW MAUSOLEUM COMPANY, Respondent.

*March 11—June 21, 1926.*

*Sales: Works of art: Implied warranty: As to light admitted by stained-glass windows: Work delivered in accordance with plans and sketches.*

1. The failure of stained-glass windows, properly constructed in accordance with the designs submitted to and approved by the purchaser, to give as much light as the purchaser desired to have, was not a failure of performance of the contract on the part of the seller, in the absence of a distinct understanding in that regard.  p. 362.

2. Where an artist is directed to produce a work of art in accordance with an approved design, the details being left to him, and he executes his commission in a substantial and satisfactory way, the mere fact that, when complete, it lacks some element of utility desired by the buyer and not specifically contracted for, constitutes no breach of the artist's contract.  p. 362.

3. The seller of the windows having constructed them in substantial compliance with designs submitted to and approved by the buyer, there was no implied warranty as to the amount of light to be admitted by them, and the buyer could not defend, therefore, on the ground of insufficient light, there being no express contract in that respect.  p. 362.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed, with directions.*

The plaintiff is a Wisconsin corporation, engaged in the business of designing, manufacturing, importing, building, and erecting stained-glass windows. The *Fairview Mausoleum Company* is a Wisconsin corporation, proprietor of a mausoleum located upon the lands particularly described in the plaintiff's complaint. Frank Larscheid, president of the plaintiff company, is an artist and was employed on behalf of his company to plan and draw specifications for, procure to be executed in Munich, Germany, import and erect twelve stained-glass windows. The plaintiff performed its contract, the windows were erected, and the defendant refused to accept them, assigning three reasons: (1st) that the windows were not constructed and erected in accordance with certain water-color sketches submitted to the defendant by the plaintiff; (2d) that the windows did not correspond with two stained-glass corridor windows previously installed in accordance with the agreement; (3d) that the plaintiff was bound by an implied warranty to deliver windows suitable for proper lighting, decorating, and ornamenting of the chapel of the Fairview mausoleum. The defendant removed the windows from the chapel, depositing them with a storage company, and sent a receipt therefor to the plaintiff.

This action was begun to recover the amount of the agreed purchase price of the windows and to have the amount declared a lien upon the premises upon which the mausoleum was situated. Upon the conclusion of the trial the court made and filed its findings of fact and conclusions of law. With respect to the agreement and its execution the court found as follows:

"That on or about the 15th of October, 1923, the plaintiff, represented by its president, Frank E. Larscheid, made a contract with the defendant, represented by its secretary

and treasurer, Edwin F. Pierce, in and by the terms of which the defendant agreed to pay to the plaintiff the sum of $200 per window for twelve stained, leaded, art glass windows which the plaintiff agreed to furnish and install in said chapel, and which the plaintiff agreed were to be similar in design to the sketches theretofore prepared and submitted by Frank E. Larscheid to Edwin F. Pierce, and which were marked Exhibits 2 and 8 on the trial, excepting that the picture of the human figure was to be a different picture for each window, and that the name of the person depicted was to be omitted; and further agreed that said chapel windows were to be light in color, with the use of the least amount of paint possible so as to freely admit light, and be in conformity with said corridor windows as to the color of the glass and the border.

"That said Frank E. Larscheid had theretofore examined the premises of the defendant and the chapel for which the windows were desired and was familiar with all conditions thereof and well knew that said windows were to be utilized for the purpose of lighting the chapel as well as for ornamental purposes.

"That on September 27, 1924, the plaintiff installed said twelve windows in said chapel during the absence of Edwin F. Pierce; that said windows are not in conformity with said corridor windows as to the color of the glass and are not with the least amount of paint, or light in color, so as to freely admit light; that they are of such darkening colors as to darken the chapel to such an extent that artificial light would be necessary during funeral services in said chapel, and that because of said darkening effect they are not in substantial compliance with said contract made between the plaintiff and the defendant. That considered from an artistic viewpoint, said chapel windows are more beautiful and more valuable than if they had been executed in compliance with Exhibits 2 and 8, and that if considered primarily from said viewpoint, said windows, as executed and installed, are in substantial compliance with Exhibits 2 and 8.

"That on or about September 29, 1924, Edwin F. Pierce notified the plaintiff that said windows were not acceptable by the defendant; that further action in relation to said windows was then delayed at the request of the plaintiff because of the continued absence from the city of Milwaukee

of Frank E. Larscheid from October 1, 1924, until December 14, 1924; and that at a conference between Edwin F. Pierce and Frank E. Larscheid on December 15, 1925, the defendant ordered the plaintiff to remove said windows from said chapel because of their darkening effect on the interior of said chapel. That the plaintiff failed to remove said windows, and on or about January 3, 1925, the defendant caused said chapel windows to be removed and stored at the Main Express Warehouse, in the city of Milwaukee, subject to the orders of the plaintiff, and immediately delivered the warehouse receipt for said windows to the plaintiff."

Upon these and other unquestioned findings judgment was entered dismissing plaintiff's complaint, from which the plaintiff appeals.

For the appellant there were briefs by *Dunn & Hirschboeck* of Milwaukee, and oral argument by *H. C. Hirschboeck* and *Michael J. Dunn, Jr.*

For the respondent there was a brief by *Hammersley & Torke* of Milwaukee, and oral argument by *Norton A. Torke* and *Charles E. Hammersley.*

The following opinion was filed April 6, 1926:

ROSENBERRY, J. The court found that there was a full performance of the contract; that the windows were excellent from an artistic viewpoint and were executed in substantial compliance with the designs submitted by the plaintiff with the single exception "that they are of such darkening colors as to darken the chapel to such an extent that artificial light would be necessary during funeral services in said chapel," and for that reason were not in substantial compliance with the contract. It is the contention of the defendant that the case is governed by sec. 121.76, Stats., being a part of the Uniform Sales Act, and cited *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 97 N. W. 515.

Wagner-Larscheid Co. v. Fairview Mausoleum Co. 190· Wis. 357.

We have examined the testimony tending to support the findings in regard to light with much care. One of the windows covered by the contract together with one of the corridor windows were produced upon the argument for the inspection of the court. Upon consideration of the testimony there is found what was to be expected in specifications for a work of art; they are indefinite, uncertain, and the whole matter was very largely within the discretion of the artist. Manifestly there cannot be drawings and specifications for a work of art in the same sense in which there can be drawings and specifications for a steam boiler. If so, the drawings and sketches would necessarily be works of art. It is undisputed in the case that from an artistic standpoint the windows are in every way an excellent production. It is also found by the court that they conform substantially to the water-color sketches made by the plaintiff. It also appears without dispute that it is impossible to reproduce with exactitude in glass a water-color sketch; that at best it can only be an approximation. There is no showing that if the windows had admitted the same amount of light per unit of area as admitted in the corridor windows, there would be sufficient light in the chapel so that one could read ordinary type. The windows were manufactured by the Gustav Van Treeck Studios of Munich, Germany. The manufacturer was directed as follows:

"These windows are in the top of a small chapel and want to be light in color, but they must be rich in color. . . . We do not want any paint on the back of the glass, and very little on the front of the glass. Remember these windows are to give light. Color scheme (B) can be slightly on the reddish order, also they are not to have a lot of paint on the glass. The least amount of paint used, the better will we be satisfied."

There is no evidence that the windows as produced did not comply with the order. It was understood between

the parties at the time of the giving of the order that the windows were to be artistic in character and of a kind that would make them suitable for memorial windows, and the defendant advertised, solicited, and procured some orders for the resale of the windows at the sum of $300 apiece. It is manifest that the defendant could not have everything. It could not have an artistic stained-glass window and unimpaired light. When designs were submitted and approved by the defendant and the windows properly executed in accordance with the design, the fact that they did not give as much light as the defendant desired to have, constituted no failure of performance on the part of the plaintiff, where there was no distinct undertaking by the plaintiff in that regard. If the windows had admitted a sufficient degree of light and had for that reason lost their artistic merit and been less desirable from an artistic standpoint, the defendant might then have rejected them on that ground. Where an artist is directed to produce a work of art in accordance with an approved design, the details of which are left to the artist, and the artist executes his commission in a substantial and satisfactory way, the mere fact that when completed it lacks some element of utility desired by the buyer and not specifically contracted for, constitutes no breach of the artist's contract. There is considerable evidence in the record which indicates that the refusal to accept the windows was based upon capriciousness and a personal dislike of defendant's executive officer for some of the officers of the plaintiff corporation whose connection was first disclosed to Mr. Pierce, one of the officers of the defendant company, after the delivery of the windows.

It is considered that under the evidence in this case there was no implied warranty on the part of the plaintiff as to the amount of light which the windows would admit or that they would admit sufficient light to enable a person

to read. There being no express contract in that respect, the plaintiff substantially performed its contract and is therefore entitled to recover.

*By the Court.*—The judgment appealed from is reversed, with directions to enter judgment for the plaintiff declaring the same a lien upon the premises as prayed for in the plaintiff's complaint.

A motion for a rehearing was denied, with $25 costs, on June 21, 1926.