.ʹAmerican Foundry and Furnace Company, ʹAppellant, vs.
    Board of Education of the City of Berlin and an-
    other, Respondents.

*December 4, 1906—April 9, 1907.*

ʹ(1–6) *Sales: Heating apparatus: Guaranty of results: Option to make it heat or refund money: Reasonable time: Acceptance: Use after demand for removal: Evidence as to operation of plant.*
(7) *School boards: Meetings: Presumption as to regularity.*
(8) *Costs: Change of venue: Witness fees.*

ʹ1. The evidence in this case is *held* to sustain a verdict to the effect that heating apparatus furnished by plaintiff and placed in a school building did not fulfil a guaranty that it would warm the rooms of the building to an average temperature of seventy degrees during the coldest weather and at the same time secure good ventilation, and that plaintiff, upon being notified of the fact, failed to make it do so.

:2. Heating apparatus furnished by plaintiff was guaranteed to produce certain results, and the contract provided that if it did not do so plaintiff, upon being notified of the fact, would either make it do so or refund all money paid and remove the apparatus. *Held,* that plaintiff, on being so notified, had the option as to which of the two things it would do, but was bound to do one or the other within a reasonable time.

3. Where after repeated notifications and repeated attempts, continuing through two winters and covering a period of a year and a half, plaintiff had failed to make the apparatus fulfil the guaranty, it could not reasonably ask a longer time, but became bound to refund the money paid and remove the apparatus from the building.

4. Where, after due demand and notice made and given at the end of said period, plaintiff had failed to remove the heating apparatus, the subsequent use thereof in the building, in consequence of plaintiff's failure to remove it, did not constitute an acceptance of the apparatus.

5. There having been no change in the capacity or efficiency of the apparatus after such demand for its removal, evidence as to its operation during the following winter was admissible, the conditions being substantially the same as during the previous winters while plaintiff was trying to make it fulfil the guaranty.

6. Where plaintiff's contract required it to furnish registers for the corridors of the building, but did not guarantee the warming of corridors to seventy degrees, it was clearly implied that the corridors were to be warmed to some extent, and it was not error to admit testimony as to the heating thereof, the jury being instructed that under the contract they were not to be heated to seventy degrees.

7. Where the minutes of meetings of a school board affirmatively show that they were called and held pursuant to and as required by a rule of the board, and there is no evidence to the contrary, the presumption that they were so called and held is conclusive.

8. That part of sec. 2625, Stats. (1898), which provides that if the application for a change of venue be made after any continuance in the action obtained by the party applying for such change it shall be granted only upon payment of certain costs, but that no costs for attendance of witnesses shall be included if notice of the application, etc., shall have been served ten days before the commencement of the term, is not applicable where no continuance was obtained prior to the application for change of venue; and in such case fees for the attendance of witnesses at that term are a part of the costs, if any, recoverable by the prevailing party.

APPEAL from a judgment of the circuit court for Waushara county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action to recover the balance due upon contract. It appears from the record, and is undisputed, that August 16,

1901, the defendants, being about to construct a new high
school building in the city of *Berlin,* entered into a written
contract with the plaintiff wherein and whereby the plaintiff
agreed "to furnish and set in position in a neat and workman-
like manner ready for use in the building referred to . . .
the Improved Smead Heating and Ventilating Apparatus as
therein described, and to furnish a superintendent to super-
intend the setting of the apparatus, and to give all instructions
necessary for the proper introduction of the Smead system
of ventilation, and furnish plans and specifications showing
the proper construction of said building for warming and ven-
tilating with said apparatus, without charge," and "to furnish
all necessary registers, register frames, register faces, venti-
lating iron base, and valve regulators required in the execu-
tion of this contract.    Apparatus is guaranteed to burn soft
coal or wood and is to be set as per plans furnished by"
plaintiff, "together with all necessary connections, and all
work shall be done in a thoroughly neat and workmanlike
manner to the satisfaction of" the defendants.    It was also
understood and agreed therein that said apparatus should be
set and all work done by plaintiff promptly and without delay
to the defendants or other contractors on the building, and that
the apparatus might be set at any time between the laying of
the foundation walls and the completion of the building.    The
plaintiff therein and thereby guaranteed "that said apparatus
shall with good care warm the rooms of said building, in ac-
cordance with plans submitted and made a part of this con-
tract, to an average temperature of seventy degrees Fahrenheit
during the coldest weather and at the same time secure good
ventilation in all the rooms warmed."    The plaintiff "will
also furnish registers for corridors, but does not guarantee
warming of corridors to seventy degrees provided corridors
are more than one story high.    Provided the said apparatus
does not fulfil the above guaranty," the plaintiff, "*upon be-
ing notified of the fact,* agrees either to *make it do so* at their

own expense by furnishing additional apparatus, or by making such changes and alterations as may be necessary, *or to refund all money paid them and remove the apparatus from the building."*

The defendants agreed "to follow the plans, specifications, and instructions given by" the plaintiff "concerning construction of· said building for warming and ventilation and for using the apparatus—a copy of instructions will be furnished with the apparatus,—do all mason and carpenter work and furnish all material for the same necessary to properly set the said heating apparatus, and pay the" plaintiff $3,500 as follows: $1,000 when the furnaces are delivered at high school building, $1,800 when furnaces are set in position in the basement, and $700 April 1, 1903. A note or school order was to be given to the plaintiff for the last-named amount when the furnaces were set in position in basement, and all payments were to be subject to draft when the same should become due, and all sums to draw interest at six per cent. after due until paid. The plaintiff was not to be held responsible for delays caused by other contractors on the building, and no verbal contracts were to be binding.

It is conceded that when the furnaces were delivered at the high school building the defendants paid to the plaintiff the $1,000 called for by the contract, and that when the furnaces were set in position in the basement the defendants paid to the plaintiff the $1,800 called for in the contract. It is also conceded that the high school building was completed on or about September 20, 1902, and about the same time the public school for the year was commenced. The defendants declined to pay the $700 which by the terms of the contract became due and payable April 1, 1903, on the ground that the apparatus had failed to heat the building as required by the contract. The plaintiff continued to try to make the apparatus work according to the contract during the school year of 1903–1904. Early in May, 1904, the defendants notified the plaintiff that

the heating and ventilating plant was not satisfactory and failed to fulfil the contract. Thereupon the plaintiff notified the defendants that it claimed that the plant would warm the building in all kinds of weather as agreed in the contract. The defendants then notified the plaintiff that they would withhold payment by reason of the plaintiff's failure to perform the contract, and thereupon the defendants requested the plaintiff to take the apparatus out of the building and pay back the money which had been so advanced.

On July 13, 1904, the plaintiff filed its claim for the $700 with the defendants, and July 19, 1904, same was disallowed by the defendants. On September 22, 1904, the plaintiff appealed from such disallowance to the circuit court. On January 9, 1905, the plaintiff served its verified complaint to recover said balance of $700, less $55 to be deducted by reason of certain changes in the apparatus, and demanded judgment for $645, with interest thereon at six per cent. from April 1, 1903. The defendants answered by way of admissions, denials, and counter allegations to the effect that the defendants, relying upon the warranties, guaranties, and promises contained in the contract, had paid the $2,800, and that the defendants had notified plaintiff of such failures to make the apparatus heat the building as required by the contract; and also by way of counterclaim alleged similar facts, and the expense and damages sustained by the defendants by reason of such failure of the plaintiff to perform such contract, and demanded that the complaint be dismissed on the merits and that the defendants recover back said $2,800 and interest and certain damages and interest. The plaintiff demurred to the counterclaim, and the same was overruled by the court. Thereupon the plaintiff replied and put in issue the respective counterclaims.

At the close of the trial the jury returned a verdict to the effect that they found for the defendants that the plaintiff had no cause of action, and they further found for the defendants

on their counterclaims, and assessed their damages at $2,800 and interest thereon from June 23, 1904, and for the further sum of $75 and interest thereon from September 1, 1905, amounting in all to $3,088.57. From the judgment entered thereon for the amount stated, with costs taxed at $511.88, the plaintiff appeals.

For the appellant there was a brief by *McElroy, Eschweiler & Wetzler,* and oral argument by *F. C. Eschweiler.*

For the respondents there was a brief by *Geo. B. Heaney,* attorney, and *John J. Wood* and *B. R. Goggins,* of counsel, and oral argument by *Mr. Goggins.*

The following opinion was filed January 29, 1904:

CASSODAY, C. J. 1. Errors are assigned because the court refused to direct a verdict in favor of the plaintiff and refused to set aside the verdict and grant a new trial, and ordered judgment on the verdict in favor of the defendants and against the plaintiff. In other words, the claim is that the verdict is not sustained by the evidence. The substance of the contract is given in the foregoing statement. By the terms of that contract the plaintiff agreed that with good care the apparatus would warm the rooms of the building to an average temperature of seventy degrees during the coldest weather and at the same time secure good ventilation in all the rooms warmed, and that if the apparatus did not fill the above guaranty the plaintiff, "upon being notified of the fact," would "either make it do so" at its own expense or "refund all money paid" to the plaintiff "and remove the apparatus from the building." The finding of the jury is to the effect that the apparatus did not fulfil such guaranty, and that the plaintiff, upon being notified of the fact, failed to make it do so or to refund the money which had been paid and remove the apparatus from the building. Whether such finding is sustained by the evidence is the important question in the case upon the merits.

Undoubtedly the plaintiff, "upon being notified of the

fact" that the apparatus did not fill the above guaranty, had the option either to make it do so "or to refund all money paid" and "remove the apparatus from the building." The contract does not name a specific time within which the plaintiff would make the apparatus perform, as required by the contract, or pay back the money and remove the apparatus from the building; but the law undoubtedly required it to be done within a reasonable time. Until that time expired, or the option exercised, the matter was to be determined by the plaintiff. Counsel contends "that every time any request or suggestion was made by the defendants with reference to this apparatus the plaintiff immediately sent representatives to *Berlin* to remedy any defect there might be." But the contract required the plaintiff, upon being so notified, either to make the apparatus so fulfil the guaranty or refund the money and remove the apparatus from the building. Upon being so notified of the fact of failure the plaintiff was bound by the contract to do the one thing or the other. That obligation was not discharged by sending "representatives to *Berlin* to remedy any defect" complained of. As stated, the school building was completed and ready for use September 20, 1902. The first test of the capacity of the apparatus for heating the rooms of the building came with the cold weather of that autumn. The evidence bearing upon such notification and the capacity of the apparatus to heat the rooms in cold weather is voluminous and cannot here be fully given in detail. Some of it is in writing and speaks for itself; but only the substance can be stated here.

As early as October 11, 1902, the plaintiff was notified by the defendants by letter that the furnace did not work as it should. Two days afterwards the plaintiff wrote asking information as to whether the difficulty was with the engine, or the apparatus that controlled the temperature, or the furnaces proper, as each line of work would require the sending of a different man. October 15, 1902, the defendants replied that,

when the clinkers were scraped out, the places would not open to let them fall through; that some rooms ran to seventy-five degrees, while other rooms ran from forty-eight to fifty degrees and could not be heated. The next day the plaintiff wrote, thanking the defendants for such information and giving certain instructions until the plaintiff's man arrived to fix it, and stating that the apparatus could be adjusted so that all the rooms could be shut off when the temperature reached seventy degrees. November 21, 1902, the defendants again wrote the plaintiff that they were having a lot of trouble in getting the rooms heated and explaining the trouble—that some of the rooms were cold a great share of the time, while others reached eighty degrees; that the engine would run very fast and then very slow. December 5, 1902, the defendants again wrote the plaintiff that there was no use talking, that the plaintiff must come to *Berlin* and straighten up the furnace and engine; that they had already burned fifty tons of coal and the winter had scarcely begun, and they could not stand for any more fooling. The next day the plaintiff replied that it did not blame the defendants for feeling as they did in reference to the engine; that the writer became thoroughly disgusted with it himself; that somebody would be there to fix it the next Monday. December 8, 1902, the defendants telegraphed the plaintiff: "Furnace won't heat. You must come."

The oral evidence tends to prove that at that time no part of the plant seemed to be doing its work, that there was a failure to get the required amount of heat, and that it was too cold to keep school. Owing to the fact that a local paper blamed the janitor for the failure to heat the building, the defendants, under date of December 9, 1902, wrote the plaintiff as to whether it considered the janitor to blame, and the next day the plaintiff replied to the effect that it seemed impossible that any person knowing the facts could have "made any such statement to anybody in reference to that

plant;" and further stating that there were a few things nec-
essary to be done in order to get that plant working just as it
should work—that it might "be ten days or two weeks before"
they could be done, as the plaintiff was very busy.  Under date
of February 16, 1903, the plaintiff was informed by letter
that there was inability to heat the building that morning;
that at 8 o'clock a. m. the thermometer was eight or ten de-
grees below zero outside and only from fifty to sixty degrees
above zero in the several rooms of the building, with the high
school room the coldest; that by recess the thermometer had
not gone up a degree and some of the rooms had actually gone
down, so that it became necessary to send the scholars from
the high school room home until noon; that at 11:30 there
was not a room in the building over sixty-four degrees, with
the big room at fifty-four degrees.  February 18, 1903, the
defendants sent this telegram to the plaintiff: "By order of
board of education you are notified that heating plant installed
by you in school building here does not fill guaranty in your
contract.  You are notified to do so or to remove plant."  On
the same day the defendants sent to the plaintiff a formal let-
ter, reciting the essential terms of the contract, and requiring
the plaintiff to forthwith perform the contract or return the
money and remove the apparatus from the building.  On the
next day the plaintiff answered, refusing to pay for the tele-
gram on the ground that it was unnecessary, and explaining
why a man had not reached *Berlin* the week before, and
stating that there was no reason why the plant should not work
all right if in proper condition and properly handled, and re-
gretting that the defendants had been annoyed to the extent
mentioned, but assuring them that the plaintiff would do
everything within its power to arrange matters so that the
janitor would handle the plant in a manner to make it work
satisfactorily to everybody.

Under  date of February 21, 1903, the plaintiff wrote the
defendants, among other things, that "we are going to continue

working at that plant until we learn where the trouble lies and remedy the defect at our expense," and that the plaintiff's man at *Berlin* had written that he thought he had found the difficulty and was going to remain until he had remedied it.   Under date of March 26, 1903, the plaintiff wrote the defendants that it had caused to be shipped to the defendants a new gasoline engine and would send a man to set it up, and hoped and thought it would be the last of the defendants' troubles in connection with the heating plant in that building.   April 2, 1903, the defendants wrote the plaintiff that the engine had arrived and requested that it be set at once, and suggested that the payment of the balance of the contract price be deferred until the next winter, after the plant had been thoroughly tested; and the next day the plaintiff replied that to hold payment until the next winter would be perfectly satisfactory.

As the weather grew cold in the fall of 1903, trouble with the apparatus was renewed.   As early as November 4, 1903, the defendants wrote to the plaintiff complaining about the working of the new engine.   On January 4, 1904, the defendants telegraphed the plaintiff: "School closed.   No heat." The receipt of that telegram was acknowledged by the plaintiff by telegram on the same day and also by letter to the effect that the plaintiff was in doubt whether to send to *Berlin* a heating man, a regulating man, or an engine man—any one or all might be needed,—and promising to send men soon, and asking for information, and stating that the building ought to have been heated readily that morning.   On the next day the defendants wrote the plaintiff to the effect that the engine man had been there and fixed the engine and left repairs for it; that the engine and fan worked, but that the heating plant, as theretofore, had proved a failure; that for two weeks carpenters had been fixing the ceiling of the main room and kept up fires during the time; that the Sunday before they kept fires all day and left a good fire at night, and started the fires anew at 4 o'clock on Monday morning; that some of

the water pipes burst, and it was 12 o'clock before they got the heat up to forty degrees, and at school time in the afternoon could only get it up to fifty-one or fifty-two degrees, and closed by stating what the defendants had stated before, that "this plant will never heat that building, and the sooner" the plaintiff made up its mind "that this is so the better it will be for the *Berlin* school board, as the citizens of *Berlin*" were "about ready to take matters into their own hands." Under date of January 22, 1904, the plaintiff wrote the defendants, giving an excuse for not answering before, and thanking them and requesting more particular information thereafter, and stating that "eventually" the plaintiff would "get that plant to working nicely"—that the plaintiff was "going to fulfil" its contract.

Under date of March 9, 1904, the defendants wrote the plaintiff that the school board had decided that the heating plant was not satisfactory and did not comply with the contract. March 21, 1904, the board voted to notify the plaintiff that it had failed to fulfil the contract for heating and ventilating the high school building, and the next day the defendants wrote to the plaintiff to that effect. Under date of April 2, 1904, the plaintiff wrote the defendants, giving absence as a reason for not answering sooner, and asking in what respect the plaintiff had failed to perform its contract with the defendants. May 6, 1904, the plaintiff by letter offered to give to the defendants a "guaranty or bond made by the Milwaukee Trust Company . . . to the amount of $3,500 as a guaranty that all the guaranties and agreements" in the contract would be fulfilled, on condition that the defendants pay the balance due on the contract, and stating that the plaintiff knew positively that the plant would warm the building in all kinds of weather. May 10, 1904, the board voted to withhold further payment until in their opinion the plant proved satisfactory, and May 13, 1904, the defendants wrote the plaintiff to that effect. May 14, 1904, the plaintiff asked how long the de-

fendants wanted to run the plant before making final payment. June 2, 1904, a resolution was adopted by the board of education requiring and directing the plaintiff to forthwith remove the apparatus from the high school building and refund and repay into the school fund of the city the $2,800, all of which was thereby demanded; and a certified copy thereof was June 23, 1904, served upon the plaintiff, who thereupon acknowledged the receipt thereof, and stated in the letter that the plaintiff had never had the name of not fulfilling its contracts, but that it was satisfied that its contract with the defendants had been fulfilled.

July 13, 1904, this action was commenced by the plaintiff filing its claim with the board of education, which claim the board disallowed July 19, 1904, and from such disallowance the plaintiff appealed to the circuit court September 22, 1904.

The correspondence, of which a general outline is thus given, shows the attitude of the respective parties from October 11, 1902, to June 23, 1904, as to the failure of the apparatus to heat the rooms of the building as agreed in the contract. From such correspondence it conclusively appears that the defendants repeatedly "notified" the plaintiff "of the fact," if it be a fact, that the apparatus did not fulfil the guaranty contained in the contract. The oral testimony as to whether such apparatus fulfilled such guaranty is voluminous. After careful consideration we are constrained to hold that the evidence in the record is sufficient to sustain the verdict. As indicated in the brief of counsel for the plaintiff, the complaints of such failures to warm the rooms of the building were generally followed by promises on the part of the plaintiff to send men to remedy the defects, which they attempted to perform. Such complaints on the part of the defendants and attempts to perform on the part of the plaintiff had continued during two winters and covered a period of about a year and a half. Certainly the plaintiff was given all the time it could reasonably ask to make the apparatus perform accord-

ing to the contract. It had agreed that "upon being notified" that the apparatus did not, with good care, warm all the rooms of the building "to an average temperature of seventy degrees during the coldest weather and at the same time secure good ventilation," then it would either make it do so at its own expense or "refund all money paid . . . and remove the apparatus from the building." If there was such failure to perform as claimed by the defendants, then the agreement called for effective action on the part of the plaintiff.

Counsel contends that, because the defendants after June 23, 1904, continued to use the entire system furnished by the plaintiff, they thereby exercised absolute and unqualified ownership of the same, and hence that the defendants cannot maintain their counterclaim based upon the clause of the contract mentioned. We cannot hold that such use under the circumstances mentioned constituted an acceptance of the apparatus. *Fuller-Warren Co. v. Shurts,* 95 Wis. 606, 70 N. W. 683; *Williams v. Thrall,* 101 Wis. 337, 76 N. W. 599; *Madison v. Am. S. E. Co.* 118 Wis. 480, 507, 95 N. W. 1097; *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1, 6–8, 97 N. W. 515. If the plaintiff failed to perform, as found by the jury, then, under the contract, it was the duty of the plaintiff to "remove the apparatus from the building." Such use on the part of the defendants, in consequence of such failure of duty on the part of the plaintiff, cannot be regarded as an acceptance of the apparatus.

2. Twenty-nine errors are assigned, all relating to the admission or exclusion of testimony. They are promiscuously arranged and often repeated. The view taken of the contract and the rights of the parties under it, as above expressed, obviates the necessity of any specific expression in regard to several of such alleged errors thus presented. Of course, all letters and testimony having a legitimate bearing upon any of the questions at issue were admissible, and all irrelevant testimony was properly excluded. It has been said by a court of

high authority that when the errors assigned are very numer-
ous it is practically necessary to consider but few of them.
*Grayson v. Lynch,* 163 U. S. 468, 16 Sup. Ct. 1064; *Olwell
v. Skobis,* 126 Wis. 308, 315, 105 N. W. 777. We have, how-
ever, examined all of them, but several are not of sufficient
importance to be specifically mentioned.

3. The rights of the parties must be determined as of June
23, 1904, when the plaintiff was notified to remove the appa-
ratus from the building. That was in summer, when the heat-
ing capacity of the apparatus could not be tested. Of course,
the operation of the plant prior to that time, and its heating
capacity, were legitimate subjects of inquiry. Exception is
taken to the admission of testimony as to the operation of the
plant subsequently to January 12, 1905, on the sole ground
that at that time the defendants had absolutely accepted the
apparatus. There was no claim that there had been any
change in the capacity or efficiency of the apparatus subse-
quently to June 2, 1904. Under such circumstances we per-
ceive no reason why evidence of the operation of the plant
during the winter of 1904–1905 was not admissible. The
conditions were substantially the same as during the two pre-
vious winters and seem to have been so regarded by both par-
ties. The defendants at no time refused to allow the plaintiff
to inspect the plant.

4. Error is assigned because the court admitted testimony
as to the heating of the corridors of the building. The claim
is that, although the contract required the plaintiff to "fur-
nish registers for corridors," yet it did "not guarantee warm-
ing of corridors to seventy degrees, provided corridors are
more than one story high," and that, as the corridors were
more than one story high, no heat therefor was required to
be furnished. The trial court construed that clause of the
contract differently, and so charged the jury that under the
contract "the corridors . . . were not to be heated to seventy
degrees." No exception was taken to such charge, and we

perceive no error in admitting such testimony. It clearly implies that the corridors were to be heated to some extent.

5. Errors are assigned in admitting testimony to the effect that since and including August 16, 1901, when the contract was made, meetings of the school board were held pursuant to and as required by a rule of the board which declares that "the regular meetings of the board shall be held on the first Thursday evening of each month" at the times and places therein named, and that "special meetings of the board may be called by the superintendent at his discretion or at the request of any two members," and that four commissioners present should constitute a quorum. The minutes of the board in evidence affirmatively show that the meetings in question were so held, and in the absence of evidence to the contrary the presumption is conclusive that such meetings were so called and held. 20 Am. & Eng. Ency. of Law (2d ed.) 1212; *Kavanaugh v. Wausau,* 120 Wis. 611, 614, 615, 98 N. W. 550; *Wright v. Forrestal,* 65 Wis. 341, 350, 27 N. W. 52.

6. Error is assigned because in the taxation of costs the clerk of the trial court allowed witness fees for the attendance of witnesses at the June, 1905, term of the circuit court for Green Lake county, $59.40, which taxation was in all things and as to all items therein affirmed by the trial court, with $10 costs of motion. It appears that the cause was not tried at that term of the court, but the venue was then changed to Waukesha county. Of course, costs are purely statutory. The statute provides that "costs shall be allowed of course to the defendant . . . unless the plaintiff be entitled to costs," and "all the necessary disbursements and fees of officers allowed by law." Secs. 2920, 2921, Stats. (1898). This includes witness fees. *Keith Bros. & Co. v. Stiles,* 92 Wis. 15, 64 N. W. 860, 65 N. W. 860. Counsel for the plaintiff contends that under the statute, upon a change of venue, costs are only permitted after a continuance has been had by the party mak-

ing the application, and that even then no witness fees are to be included if notice of the application and a copy of the affidavit upon which it is based are served upon the opposite party ten days before the commencement of the term. Sec. 2625, Stats. (1898). The difficulty with the contention is that the provision of the statute thus referred to is applicable only to a party who had obtained a continuance in the action prior to making such application, whereas in the case at bar no continuance had previously been obtained by either party. The defendants, having prevailed on the trial, are entitled to full costs and disbursements. We find no reversible error in the record.

*By the Court.*—The judgment of the circuit court is affirmed.

TIMLIN, J., took no part.

A motion for a rehearing was denied April 9, 1907.