## NORMAN S. LOVELAND *vs.* AYMETT'S AUTO ARCADE, INC.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued January 8th—decided April 7th, 1936.

*William N. DeRosier,* for the appellant (plaintiff).

*Frederick W. Beach,* with whom, on the brief, was *S. Russell Mink,* for the appellee (defendant).

BROWN, J. The finding corrected in so far as the record warrants discloses the following pertinent facts. The plaintiff, engaged in the business of selling heating and electrical equipment, by a written contract of November 3d, 1933, agreed to sell, and the defendant, engaged in the business of selling automobiles and conducting a gasoline filling station, to buy at the agreed price of $375, "1 Westinghouse Marr Power Burner installed with 275 gal. tank 17″ fire pot . . . Capacity of burner 1200 ft. of radiation." The defendant in contracting relied upon the plaintiff to select a suitable burner and to make it work properly. The installation was completed November 9th, 1933. From shortly thereafter and frequently throughout the heating season of 1933-4 the defendant had trouble with the burner, which did not operate properly. The pilot light at times went out, adequate heat for the defendant's building was not provided, and an excess of carbon formed in the burner, resulting in improper combustion and the deposit of soot upon the interior walls. Frequent complaints of these conditions made to the plaintiff brought repeated service calls during the heating season and he endeavored to remedy the trouble but did not succeed. The oil burner was a good one and adequate if properly installed to heat the defendant's building, but it never was properly installed and the directions of the manufacturer's expert to seal all apertures in the combustion chamber were not followed. This was the principal cause of the burner's failure.

Prior to this contract with the plaintiff, the defend-

ant had had a suitable boiler properly installed, to which the plaintiff attached the burner. The improper combustion of the burner through an explosion caused a separation of the top of the boiler from the base which aggravated the difficulties with the burner. This made it essential that the boiler be reset to obtain proper combustion by the burner. Although the defendant learned of this in February, 1934, it did nothing about it until December 9th, 1934, when it had another dealer do the work at an expense of $20, and at the same time, because of the continued unsatisfactory operation of the burner, had it removed and a different one installed by this dealer in its place. The other equipment installed by the plaintiff in connection with the burner, however, consisting of an oil tank, oil line, electric connections, etc., of the total value of $105, were not removed, but were and still are being utilized in the new installation. The defendant retained possession also of the thermostat and pressurestat, which it is ready to return to the plaintiff with the burner. After paying a total of $85.38 on account of the $375 purchase price, the defendant refused to make any further payments as agreed, because of the failure of the burner to function properly.

The trial court concluded that because of the failure of the burner to operate properly and to heat the defendant's premises, "the defendant had a right to cancel the contract on December 4, 1934" and to recover of the plaintiff the $85.38 paid, plus $20 expended for cleaning the walls, a total of $105.38; and suggests in its memorandum of decision that the burner, together with the thermostat and pressurestat valued at $105, should be returned to the plaintiff. The pleadings are comprised of the complaint claiming damages for the purchase price under the sale agreement; the defendant's answer admitting the execution of the agreement,

but alleging that the burner was improperly constructed and installed, and did not function properly, resulting in the depositing of soot, and causing an explosion damaging the burner and the defendant's building, that the plaintiff's attempts and the defendant's expenditures to remedy the trouble have been unavailing, and that though the plaintiff represented the burner would properly heat the defendant's building, which the defendant relied upon in signing the contract, the burner failed to do so; and the defendant's counterclaim alleging that "because of the defects of such installation in such burner, the defendant has been damaged because of such explosion," resulting in its being without heat and put to expense for repairs, that, contrary to the agreement sued on, the plaintiff had failed to purchase a Nash car of the defendant resulting in a loss to it of $150 as commission, and concluding: "The defendant claims $500 damages." The judgment is that the court "finds the issues for the defendant on the complaint and further finds the issues for the plaintiff on the counterclaim." The fundamental question upon this appeal is whether the trial court erred in rendering this judgment, based upon a rescission of the contract as disclosed by the record.

If the contract could be regarded simply as one of a sale of the oil burner and equipment, the only allegations in the defendant's pleading to be construed as setting forth a breach of warranty upon which such rescission could be predicated, are those of the answer that it was represented that the burner would properly heat the defendant's garage, its reliance thereon in entering into the contract, and the burner's failure so to do. Since the court concluded, however, that the burner was a good one and was adequate to afford the needed radiation for properly heating the defendant's

building, but that its failure to function satisfactorily was due to improper installation, obviously here was no breach of warranty to support the judgment.

The contract, however, was something more than the bare contract of sale above suggested. It included not only an agreement for the sale of the burner and equipment, but for their installation as well. This is clear from the terms of the written agreement of the parties, providing among other things for a "burner installed," and further for a first payment on account therefor "when burner is working as it should." It is also evidenced by the conduct of the parties, including the installation of the burner and equipment by the plaintiff, the defendant's repeated complaints to him of their failure to function satisfactorily, and the plaintiff's efforts in response thereto to remedy the trouble. This conduct has added significance in the light of the fact that the defendant relied upon the plaintiff not only to select a burner which would operate satisfactorily in the defendant's building, but also to make it so operate as well. The plaintiff's agreement to install the equipment, carried with it an implied obligation to use proper care and skill in so doing. This duty, as the court's finding makes clear, the plaintiff failed to discharge fully, particularly with relation to sealing up openings in or connected with the combustion chamber. Did this failure, preventing the burner from functioning properly, warrant a rescission of the contract by the defendant?

This implied obligation of the plaintiff to use proper care and skill in installing the equipment, constituted an executory promise by him under the contract. While it is so that a complete failure to perform such a promise may under certain circumstances constitute a total failure of consideration discharging the adversary party from performing its promise made in con-

sideration thereof and entitling him to rescind the contract (5 Page, Contracts [1921 Ed.] § 2980), this cannot result unless the promise broken is so vital a term of the contract that its breach renders performance thereof impracticable and defeats its purpose. Op. Cit., § 2981; 6 R.C.L., p. 926, § 311.

Upon this record, we have no need to inquire whether the plaintiff's default was such as to give rise to a right in the defendant to rescind, because its subsequent conduct precluded a judgment therefor in its favor. For it removed the burner, thermostat, and pressurestat, and had another dealer install a new burner and utilize, in connection therewith, the rest of the equipment as originally installed by the plaintiff. This equipment, worth $105, has never been removed, but is still being used as a part of the heating system of the defendant's building. This appropriation of it, to the defendant's own use, and the consequent failure to either make or tender restitution to the plaintiff eliminated the possibility of any right on its part to cancel or rescind the contract. 6 R.C.L. p. 936, § 319. In view of our conclusion that the defendant had no right of rescission here, it is unnecessary to discuss the effect, if any, of its delay of more than one year in its attempted disaffirmance of the contract.

From its terms, purpose, and the attendant circumstances, it is clear that the contract here is entire and not a divisible one. Therefore the defendant had no right to accept one part and reject the rest, for that would impose a new contract on the plaintiff. *Thompson Machine & Supply Co.* v. *Graves,* 91 Conn. 71, 73, 98 Atl. 331; 6 R.C.L. p. 936, § 318.

For the reasons above discussed, the defendant had no right to the cancellation or rescission of the contract. The facts found cannot support a judgment

predicated thereon. Nor do the pleadings warrant it. They contain no allegations sufficiently raising the issues involved thereunder. 24 R.C.L. p. 293, §§ 574, 575, and p. 291, § 573. The court therefore erred in rendering judgment as it did. The defendant's rights to relief for the improper installation are limited to the recovery of such damage as it can prove under the allegations of its counterclaim. This amount it is entitled to set off against the balance of the contract price recoverable by the plaintiff on his complaint. Whether the defendant used due care to minimize its damage resulting from the plaintiff's breach of the contract, and the amount of the defendant's damage under its counterclaim, cannot be ascertained with sufficient certainty upon the record to warrant our ordering judgment entered.

There is error, the judgment is set aside, and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.