[No. 31232. Department Two. January 6, 1951.]

R. L. Coovert *et al., Appellants,* v. R. J. Ingwersen
*et al., Respondents.*[1]

*Henderson, Carnahan & Thompson* and *Henry C. Perkins,*
for appellants.

*Burmeister & Stouffer,* for respondents.

Robinson, J.—This is an appeal in an action to foreclose a
lien upon a dwelling-house property belonging to a husband
and wife, both of whom were well along in years and in bad
health, when, on December 4, 1947, they gave the plaintiffs
an order to install a heating system in their home for the
sum of $770, plus sales tax of $23.10, that is, in the aggregate,
$793.10. In addition, the plaintiffs were entitled to retain,
as a part of the purchase price, the old burner which they
removed in order to install the new equipment. The plain-

[1]Reported in 226 P. (2d) 187.

tiffs began the installation of the heating unit on the day the order was given and completed it on the following day. No payment whatever having been made by the defendants, the plaintiffs, on January 28, 1948, filed a lien on the defendants' home for $793.10. This action to foreclose the lien was filed on May 18, 1948, alleging the basic facts hereinabove set forth.

In their answer, the defendants admitted that they gave the order for the installation of the heating system and agreed to pay the plaintiffs $793.10 for so doing, and that they had not paid the plaintiffs that sum or any part thereof.

In their answer and cross-complaint, defendants alleged that, in the winter of 1947, their heating system was what was known as a gravity hot air system, which furnished them inadequate heat, a fact which they made known to the plaintiffs, and further alleged that the plaintiffs represented themselves as being heating engineers and experts in the heating line, and could revise and reconstruct the heating system then in their home; and further represented that they could put in a system which would furnish adequate heat in their house and "would operate in a cleanly manner and fashion."

Defendants further alleged that they were entirely ignorant of heating technique, and that, relying upon the representations of the plaintiffs and their warranties, express and implied, gave the plaintiffs the order to install the system, for which they would pay $793.10.

It was further alleged that plaintiffs made the installation on December 4 and 5, 1947, and that it was not at all as represented, in that it gave insufficient heat and that it forced, through their house, a deposit of oil, dust, and smut upon its walls, windows, curtains, and tapestries; and that, for those reasons, they had refused to pay any part of the purchase price and demanded that the plaintiffs take the furnace out and return the furnace which they took out of their house when they made the installation of the new system on December 4 and 5, 1947.

In their cross-complaint, the respondents prayed for a rescission of the contract, and also for damages in the

amount of $770. Broken down, the damage claimed was made up of the following items:

Two hundred dollars, with respect to the heating unit which the plaintiffs removed in order to install the unit which the respondents, on December 4th, ordered them to install;

Three hundred dollars, for the reinstallation of the unit which the plaintiffs took out in installing the unit which the respondents ordered them to install;

One hundred fifty dollars, for damages to curtains, tapestries, and walls, alleged to have been caused by dust and soot distributed through the house by the new furnace;

One hundred twenty dollars, for storage charges of the new furnace, calculated at the rate of ten dollars per month after they had notified the plaintiffs that they would not pay for the heating system which they had installed on December 4, 1947.

The first, second, and fourth of these items were apparently asserted in connection with the demand for rescission, and not as damages for breach of warranty. The plaintiffs had retained the old burner as a part of the purchase price. Upon rescission, the defendants would be entitled to a return and reinstallation of that burner. The value of the old burner and the cost of reinstalling it or a substitute unit is sought in the first two items referred to above. Upon rescission, the defendants might also be entitled to reimbursement for the cost of storing the new heating equipment, and this is sought in the fourth item referred to above. If rescission is not the appropriate relief, then defendants would not be entitled to recovery on any of these three items.

The third item, having to do with injuries to curtains, tapestries and walls, seems to be a claim for damages for breach of warranty. It is not in any sense conditioned upon the granting of rescission. This claim is, therefore, inconsistent with the claim for rescission, as the court could not grant both claims. See Rem. Rev. Stat., § 5836-69 [P.P.C. § 852-7].

In colloquies between counsel during the trial of the case, respondents' counsel, at times, interpreted his counterclaim

as stating a case for rescission of the contract on account of breach of implied warranty and, at other times, as an action for damages on the ground of breach of warranty or on the ground of fraud. Section 5836-15 of the uniform sales act provides, among other things, in part, as follows:

" (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The respondents, as we have hitherto noted, alleged in their cross-complaint that they made known to the appellants that the furnace in their house did not furnish adequate heat, and that appellants represented themselves as heating engineers and experts in the heating line and could put in a system that would furnish adequate heat and would operate in a cleanly manner; and further alleged that, in reliance upon such representations, they gave the appellants the order to install the system, for which they would pay $793.10.

The trial judge, on conflicting evidence, found that the above representations were made by the appellants and relied on by the respondents, and that there was, therefore, a breach of implied warranty; and that, in January, 1948, the respondents notified the appellants that they would not pay the purchase price and told them to remove the heating system from their home. The appellants did not remove the installation from the respondents' home, and the respondents continued to use it and did not attempt to formally rescind the contract until they filed their counterclaim in this action in December, 1948.

The instant case is, in many respects, strikingly like *Loveland v. Aymett's Auto Arcade, Inc.*, 121 Conn. 231, 184 Atl. 376. Early in his delivery of his oral opinion at the close of the trial of the instant case, the trial judge said:

"Now, in the first place I think it is established—or it's admitted or established, whichever way we wish to put it, that the furnace itself was—that is, the unit itself was—I

don't want to use the word 'satisfactory.' Put it this way: it was proper—the proper size for the house. That seems to be admitted by the engineers for the defendants. However, as I said before, this contract includes two things; it was the sale of the furnace and the installation of the furnace, and in the mind of the Court those two are inseparable.

"I believe there was a warranty under the Sales' Act, or even if not under the Sales' Act, this can be considered not the sale of personal property on which there might be some debate. At least there was an implied warranty that if there was a contract to install this furnace it would be done with the usual skill accorded to such matters, at least in this community, and the Court is of the opinion that that was not done."

On account of the similarity of the Connecticut case, *supra,* with the instant case, we will make a somewhat extended quotation from that opinion:

"If the contract could be regarded simply as one of a sale of the oil burner and equipment, the only allegations in the defendant's pleading to be construed as setting forth a breach of warranty upon which such rescission could be predicated, are those of the answer that it was represented that the burner would properly heat the defendant's garage, its reliance thereon in entering into the contract, and the burner's failure so to do. Since the court concluded, however, that the burner was a good one and was adequate to afford the needed radiation for properly heating the defendant's building, but that its failure to function satisfactorily was due to improper installation, obviously here was no breach of warranty to support the judgment.

"The contract, however, was something more than the bare contract of sale above suggested. It included not only an agreement for the sale of the burner and equipment, but for their installation as well. This is clear from the terms of the written agreement of the parties, providing among other things for a 'burner installed,' and further for a first payment on account therefor 'when burner is working as it should.' It is also evidenced by the conduct of the parties, including the installation of the burner and equipment by the plaintiff, the defendant's repeated complaints to him of their failure to function satisfactorily, and the plaintiff's efforts in response thereto to remedy the trouble. This conduct has added significance in the light of the fact that the defendant relied upon the plaintiff not only to select a

burner which would operate satisfactorily in the defendant's building, but also to make it so operate as well. The plaintiff's agreement to install the equipment, carried with it an implied obligation to use proper care and skill in so doing. This duty, as the court's finding makes clear, the plaintiff failed to discharge fully, particularly with relation to sealing up openings in or connected with the combustion chamber. Did this failure, preventing the burner from functioning properly warrant a rescission of the contract by the defendant?

"This implied obligation of the plaintiff to use proper care and skill in installing the equipment, constituted an executory promise by him under the contract. While it is so that a complete failure to perform such a promise may under certain circumstances constitute a total failure of consideration discharging the adversary party from performing its promise made in consideration thereof and entitling him to rescind the contract (5 Page, Contracts [1921 Ed.] § 2980), this cannot result unless the promise broken is so vital a term of the contract that its breach renders performance thereof impracticable and defeats its purpose. Op. Cit., § 2981; 6 R. C. L., p. 926, § 311."

Appellants' principal contentions are: (1) There was no breach of warranty, or at least not sufficiently vital to justify a rescission; and (2) that, if respondents ever had a right to rescind, they waived it by long use of the system.

In supporting contention (1) above, appellants stress that the testimony of the expert witnesses called by respondents was to the effect that the furnace itself was the proper size for the house, and the trial judge so expressly held. The experts also agreed, and testified, that the cold drafts, which so annoyed respondents and adversely affected their health, were caused by the fact that, in installing the system, the appellants failed to put in two more cold air runs. This amounts to a contention that the appellants should have furnished more for the same agreed price.

■ It would serve no useful purpose to further discuss appellants' first contention that there was no breach of warranty or at least none sufficiently vital to justify a rescission; for we have arrived at the conclusion that appellants' contention that, even if respondents ever had a right

to rescind, they waived it by their long use of the heating system, is well taken. We quote from 9 Am. Jur. 389, § 45:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he remains silent, and continues to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred."

We are of the opinion that is a correct statement of the prevailing general law.

We find, in 77 A. L. R., at page 1165, a comprehensive annotation entitled: "Use of article by buyer as waiver of right to rescind for fraud, breach of warranty, or failure of goods to comply with contract," and on page 1178, under subtitle "III. Waiver or abandonment of attempted rescission, or offer to rescind by use thereafter," the following:

"After an attempted rescission by the buyer of chattels which the seller has not accepted, the buyer, if he intends to rely upon it, must adhere thereto and act consistently therewith, and if he thereafter continues to use the property as his own, he may be held to have waived or abandoned the rescission, and may be precluded from rescinding or asserting a claim that he has rescinded; in other words, the use of chattels sold, by the purchaser, after the seller has refused the latter's tender of them in a rescission of the contract, will defeat the attempted rescission, if the property was used for the personal benefit of the purchaser, and not merely in compliance with his duty as bailee of the seller. This doctrine finds support in numerous cases:   . . ."

The text just above quoted is followed by citations of five decisions of our Federal courts to that effect, and more than thirty decisions from the law reports of fifteen of our state courts of last resort. We have examined the cited decisions from both the Federal and state courts, and are of the opinion that they sustain the introductory statement above quoted.

There was undisputed testimony that, on January 14, 1948, that is, during the month following the installation of the heating system, Mr. Jensen came to respondents'

home, and, after looking over the system as installed, asked the respondents to pay for it, and respondents refused to do so and told Jensen to take out the furnace. The trial judge took the view that this episode, in and of itself, constituted a rescission of the contract between the parties. It seems to us that it was merely a refusal of the respondents to perform their part of the contract, or, at the very most, a notice of their desire to rescind. Certainly, it did not release the respondents from their obligation to pay plaintiffs $793.10, and we are of the opinion that, if the respondents had a right to rescind on January 14, 1948, they waived that right by continuing the use of the furnace for their own benefit up to and including the trial of the case, which began on the 24th day of March, 1949.

In the instant case, respondent R. J. Ingwersen himself testified that the furnace had been used and operated by the respondents ever since it was installed on December 4 and 5, 1947, and was still in use during the trial of the action, which began on March 24, 1949. We quote briefly from his testimony, while under cross-examination:

"Q. Now, that burner is still in operation and it has been ever since, hasn't it? That is, you have no other means of heating except an electric heater or something, is that right? A. What do you mean, the furnace? Q. Yes. A. We do not use it any more than we just have to. Q. Well, do you have any other means of heat? A. Electric heaters and our electric range. Q. How many do you have? A. We have two electric heaters all winter and used the electric range considerable. Q. Two electric heaters. Electric range. But the only means of heat is this burner, two electric heaters and an electric range? That is right? A. Yes."

It is conclusively shown that the respondents continuously used the furnace whenever heat was needed from December 6, 1947, until and during the trial of this action late in March, 1949, although they supplemented it by the use of two electric heaters during portions of that time.

We, therefore, agree with the appellants' contention that, if the respondents had any right to rescind the contract, they waived it long before this action was begun on May

18, 1948, and, as above shown, even longer before the trial of the case and entry of judgment therein.

We, therefore, conclude that the trial court erred in granting the respondents a rescission of the contract.

We have already indicated that three of the four items of the counterclaim seeking a money recovery, were put forward only as a part of the relief sought in the event rescission was permitted. These are the first, second, and fourth money items of the complaint. The court allowed fifty dollars on the first item, and nothing on the other two. Since we here hold that it was error to order rescission, it, therefore, necessarily follows that the allowance of fifty dollars' damages, representing the value of the old burner equipment, must also be set aside.

It has been pointed out above that the counterclaim sets forth one item of damages which is disassociated with the rescission and which could be allowed, despite the waiver of rescission, if proved. This is the claim for one hundred fifty dollars, representing damage to curtains, tapestries, and walls, due to soot and smoke emanating from the defective new heating system.

The trial court rejected this claim for damages, holding that there was not sufficient evidence to enable him to fix the amount. Our view, after an examination of the record, accords with that of the trial court.

The judgment appealed from dismissed the appellants' action with prejudice, and directed the county auditor to release the appellants' lien on the respondents' premises for $793.10. It further granted the respondents judgment for fifty dollars and their costs, and ordered the appellants to remove the furnace, and its appurtenances, from the respondents' premises within thirty days.

The judgment is reversed and set aside, and the cause will be remanded to the superior court of Pierce county, with directions to enter judgment for appellants as prayed for in the complaint, except that the amount of attorneys' fees in connection with foreclosure of the lien shall be fixed by the superior court.

SIMPSON, C. J., MALLERY, HILL, and HAMLEY, JJ., concur.