[No. 32526. Department Two. November 5, 1953.]

HOLLAND FURNACE COMPANY, *Appellant*, v. UNA J. KORTH, *Respondent.*[1]

[1]Reported in 262 P. (2d) 772.

*Wayne A. Wyman,* for appellant.

*Wright & Wright,* for respondent.

HAMLEY, J.—Holland Furnace Company brought this action against Una J. Korth to recover the unpaid contract price for converting defendant's heating plant from gas to oil. The trial court sustained an affirmative defense based on rescission for fraud, and dismissed the action. Plaintiff appeals.

The essential facts, as found by the trial court, may be summarized as follows: Miss Korth was obtaining unsatisfactory service from an old cast-iron coal and wood furnace which had been converted for the use of gas, with gravity circulation of warm air. On November 12, 1951, she contacted plaintiff company regarding her heating problem, and its salesman, L. W. Wing, promptly appeared at her home.

After examining the furnace, inspecting the house, and being advised that respondent desired to rent three upstairs bedrooms, Wing recommended an oil conversion installation comprising a Holland PM-2 burner to be installed in the existing furnace box, a 7-barrel oil tank, a No. 2528 blower with new cold-air connections, and a change in the size of four warm-air pipes. Within an hour and a half after reaching the house, Wing had respondent's signature on a contract calling for such an installation at a purchase price of $1,413.14.

In inducing respondent to enter into this contract, Wing represented that this conversion installation was the best possible installation she could get for the money; that it was adequate in design to heat the entire house comfortably and evenly in the coldest Seattle weather; and that the installation would do so. Wing further represented that his proposed conversion would result in a furnace better than the new, modern furnaces; and that it was designed to and would cut respondent's fuel bills in half.

In his negotiations with respondent, Wing represented himself to be an expert in the design and sale of furnace installations, and that he had the knowledge, experience, and ability to properly design respondent's furnace. All such representations were made with the intent that respondent would rely thereon, and with the knowledge that

respondent was inexperienced in such matters. Respondent did rely implicitly upon these representations in entering into the contract.

The conversion was installed within the next two days, but proved inadequate to heat the entire house to a comfortable, even temperature in cool Seattle weather. In cold weather it was impossible to heat some rooms. The conversion was not the best possible installation respondent could have obtained for the money, and was not better than a new, modern furnace. At no time since installation has the efficiency of the converted plant been such as to cut the fuel cost in half, as compared to the previous cost of gas heat, nor has there been any reasonably close approach to such reduced cost figure.

For a period of nearly two months, appellant's employees made repeated attempts to improve the system by making adjustments and installing new pipes. On or about January 15, 1952, any further effort in this direction was abandoned. Respondent has made no payment on the contract price other than the initial down payment of $148.36.

On February 16, 1952, respondent, through her attorney, wrote a letter to appellant, notifying it that the installation was not acceptable, and directing appellant to remove its property from the premises. Appellant's complaint instituting the present action was verified on April 10, 1952, and filed on October 21, 1952. Respondent's answer reasserting rescission was served on June 9, 1952, and filed on October 27, 1952. The company has not removed its property, nor has it returned any of the parts of the old furnace removed in making the conversion. Respondent continued to use the furnace to provide heat for her home from the time of its installation until the time of the trial.

Appellant questions a number of these findings of fact. In our opinion, however, each such finding is supported by clear, cogent, and convincing evidence.

Appellant also argues that these findings of fact do not support the conclusion of law that the conduct of appellant, through its agent L. W. Wing, constituted in law fraud upon

respondent in the inception of the contract. Calling attention to the nine essential elements which must be present to constitute actionable fraud, as set out in *Webster v. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428, it is contended that the facts found fail to establish the existence of at least three of these elements.

The first such element, as set out in the *Webster* case, is that there must have been a representation of an existing fact. Appellant takes the position that Wing's representations to the effect that the proposed installation would heat economically, adequately, and evenly, relate neither to a past transaction nor to an existing fact, but are expressions of opinion as to future events.

Where it is not shown that the buyer relied upon the salesman's asserted special and peculiar knowledge of the article or of the conditions under which it was to be used, a statement that such article will satisfactorily meet the buyer's requirements will be regarded as an expression of opinion about something to take place in the future. *Webster v. Romano Engineering Corp.*, *supra*. Actionable fraud cannot be predicated upon such a statement.

But where the salesman does assert such special and peculiar knowledge, and the buyer relies thereon, a statement that the article is appropriate for, and will satisfactorily meet, the buyer's requirements will be regarded as a representation of fact. *Holcomb & Hoke Mfg. Co. v. Auto Interurban Co.*, 140 Wash. 581, 250 Pac. 34; *Weller v. Advance-Rumely Thresher Co.*, 160 Wash. 510, 295 Pac. 482. See, also, 51 A. L. R. 46, 81, annotation.

Under the findings of fact summarized above, this case is governed by the rule announced in the *Holcomb* and *Weller* cases. The requirement that the representation be of an existing fact has therefore been met.

Another essential element necessary to establish actionable fraud is that the speaker must have "knowledge of its falsity *or ignorance of its truth*." (Italics ours.) *Webster v. Romano Engineering Corp.*, *supra*. Appellant contends that this element is here lacking, and points to these observations made by the trial court:

"I don't attribute to him [Wing] any moral dishonesty in the statements he made . . ."

"Now no one has testified that these representations were known to be false at the time and made knowingly or fraudulently."

The italicized portion of the above-quoted language from the *Webster* opinion is but another way of stating the rule that if a person represents as true material facts susceptible of knowledge, to one who relies and acts thereon to his injury, he cannot defeat recovery by showing that he did not know his representations were false, or that he believed them to be true. *Jacquot v. Farmers Straw Gas Producer Co.*, 140 Wash. 482, 249 Pac. 984. For recent applications of this rule, see *Darnell v. Noel*, 34 Wn. (2d) 428, 208 P. (2d) 1194; *Gronlund v. Andersson*, 38 Wn. (2d) 60, 227 P. (2d) 741.

The findings of fact recite that, in the case of each representation concerning the capacity of the installation, Wing either knew the representation to be false, "or made it recklessly and carelessly without knowing for certain whether it was true or false." Under this finding, it is therefore apparent that the fraud element now under discussion was present in this case.

One of the other elements necessary to establish actionable fraud is that the fact which is represented have "materiality." *Webster v. Romano Engineering Corp., supra.* Appellant argues that the element of materiality was missing here because one of respondent's witnesses testified that, if a larger fan had been installed, at an additional cost of seventy-five dollars, "it would have made all the difference in the world. It would have been a good installation then so far as heating the house goes . . ."

We need not decide whether or not a misrepresentation which costs the purchaser an additional seventy-five dollars over and above the contract price of $1,413.14 is material. The representations which were relied upon in this respect were that the installation would give warm and even heat at a reduced cost of one half. Whether or not the "good in-

stallation" this particular witness had in mind would accomplish all of these represented results, is pure speculation. In any event, the diagnosis of this witness was not made until the day before he testified, which was long after the rescission. When notice of rescission was given, the situation was that appellant had made numerous adjustments of the installation and had finally abandoned any further efforts to correct the difficulty. The purchaser then had the right to assume that, if the correction could have been made at nominal expense, appellant would have made or suggested it. The materiality of the representations was established as of that date by the fact that heat was then inadequate, uneven, and relatively expensive, without prospect of improvement except by making a further substantial outlay of money.

Appellant next contends that parol evidence, admitted without objection because material to the issue of fraud, was thereafter improperly considered by the court in connection with the issue of breach of express and implied warranties. This latter issue was tendered in respondent's second affirmative defense.

In support of this argument, appellant makes reference to the contract provision to the effect that "there are no warranties, express or implied, other than those herein stated." He then calls attention to the following observation made by the trial court in its oral decision:

"I reluctantly am compelled to the conclusion that there was constructive fraud here. In my opinion there definitely was a breach of both implied and expressed warranty. Of course, except for fraud, the evidence pertaining to expressed warranties would not be proper for consideration, but having been introduced properly, being before the court, I think they are admitted for one purpose, admissible for all and worthy of consideration."

Appellant is correct in asserting that parol evidence, admitted and admissible only for the purpose of proving fraud, cannot be legally used to vary the terms of a written agreement. *Blumer v. Schmidt*, 164 Iowa 682, 146 N. W. 751; *Galva First Nat. Bank v. Reed*, 205 Iowa 7, 215 N. W.

732. Inasmuch as the contract here in question expressly disclaimed any express or implied warranties, it would therefore be improper to use parol testimony, introduced in connection with the issue of fraud, for the purpose of proving the existence of such warranties.

But, while the above-quoted observations of the trial court appear to run counter to this rule, it is apparent that appellant has not been prejudiced. This is true because, notwithstanding those oral observations, the trial court predicated its decision exclusively upon the claim of rescission for fraud, as set out in respondent's first affirmative defense. Appellant concedes that the parol evidence was admissible on the question of fraud.

Appellant's remaining assignments of error raise the question of whether respondent must be held to have waived or abandoned her rescission by continuing to use the new equipment after giving notice of rescission.

In arguing that there has been such a waiver or abandonment in this case, appellant relies chiefly upon our decision in *Coovert v. Ingwersen*, 37 Wn. (2d) 797, 226 P. (2d) 187. We there held that the purchasers of a home heating system had waived their right to rescind for fraud by continuing to use the furnace up to and including the trial of the case.

In the *Coovert* case, the furnace was first put to use on December 6, 1947. On January 14, 1948, the seller's representative called at the purchasers' home and asked them to pay for the furnace. They refused to do so, and told the representative to take out the furnace. The seller did not remove the installation, and the purchasers continued to use it. Later in the year, the seller brought an action against the purchasers to foreclose a lien securing payment of the unpaid purchase price. In December, 1948, the purchasers filed a counterclaim seeking to rescind the contract for fraud. At the time of the trial, in March, 1949, the purchasers were still using the furnace.

If the basis of our ruling in the *Coovert* case was that the use of the heating equipment *after* the giving of notice of rescission constituted a waiver, that case would be indis-

tinguishable from the case now before us. There is some language in the *Coovert* opinion which points in that direction, particularly the quotation of the rule relating to waiver *after* an attempted rescission, as set out in 77 A. L. R. 1165, 1178, to be quoted below.

Upon analysis, however, we are convinced that the real basis of our ruling in the *Coovert* case was that, if the purchasers ever had a right to rescind, they waived it by their long use of the heating system *prior to giving formal notice of rescission.* We apparently did not regard the purchasers' oral request to remove the furnace, given to the seller's representative on January 14, 1948, as an effective notice of rescission. Thus, it was observed in the opinion that the purchasers "did not attempt to formally rescind the contract" until they filed their counterclaim in this action in December, 1948.

There is other language in the opinion which points to the same conclusion, and it is significant that we quoted, as the controlling principle, a statement in 9 Am. Jur. 389, Cancellation of Instruments, § 45, to the effect that, if a party who desires to rescind remains silent and continues to treat the property as his own, he will be held to have waived the objection. In *Brown v. VanTuyl,* 40 Wn. (2d) 364, 242 P. (2d) 1021, the *Coovert* case is cited because of its reliance upon this rule as quoted from 9 Am. Jur. 389, § 45.

Whether or not we would now adhere to the basic premise of the *Coovert* case, that the informal oral request to remove the furnace was not an effective notice of rescission, is a question we need not now decide. Here, formal written notice was given on February 16, 1952, just thirty-two days after the seller abandoned its effort to improve the heating system. There was no waiver due to this short delay before giving notice of rescission, and we do not understand appellant to so contend. Use of the heating equipment for a temporary period was necessary in order for Miss Korth to determine its adequacy. Notice of rescission was promptly given after that determination was made. See *Eliason v. Walker,* 42 Wn. (2d) 473, 256 P. (2d) 298.

■ It will therefore be seen that, unlike the *Coovert* case, the issue here presented is whether use of the heating equipment *after* the giving of notice of rescission constituted a waiver or abandonment of the rescission. The principle to be applied in determining this issue is stated as follows in 77 A. L. R. 1165, 1178:

"After an attempted rescission by the buyer of chattels, which the seller has not accepted, the buyer, if he intends to rely upon it, must adhere thereto and act consistently therewith, and if he thereafter continues to use the property as his own, he *may* be held to have waived or abandoned the rescission, and *may* be precluded from rescinding or asserting a claim that he has rescinded; in other words, the use of chattels sold, by the purchaser, after the seller has refused the latter's tender of them in a rescission of the contract, will defeat the attempted rescission, *if* the property was used for the personal benefit of the purchaser, and not merely in compliance with his duty as bailee of the seller." (Italics ours.)

It will be observed that, under this rule, if it is made to appear that continued use of the property by the purchaser, after giving notice of rescission, is in compliance with his duty as bailee of the seller, no waiver or abandonment has occurred.

■ In our opinion, the nature of a home heating installation is such that, if the purchaser gives the seller prompt notice of rescission, including a request that the installation be removed, continued reasonable use of the heating system pending such removal by the seller may be found to be in keeping with the purchaser's duty as an involuntary bailee, and hence not necessarily an acceptance of the goods and waiver of the rescission.

■ In the instant case, the alternative to continued use of the installed heating system, after notice of rescission, was dismantling, removal, and storage by the purchaser. It is probable that the expense of doing this, including possible damage to the equipment (all chargeable to the seller), would have more than offset deterioration resulting from continued use of the installation until such time as the seller performed his duty of removing it. Moreover, the purchaser

was precluded from reinstalling the original equipment because the seller had removed parts which it refused to return.

Under these circumstances, continued use of the furnace did not evidence an intention inconsistent with the continued insistence on rescission. It did not violate the purchaser's duty as an involuntary bailee. It did not (except as compelled by the seller's own conduct) interfere with the ultimate restoration of each party to his *status quo*.

No cases from this or other jurisdictions dealing with this precise point have been called to our attention. There are several decisions, however, in which the special situation created by the installation of a heating system has been taken into consideration in granting or affirming judgment for the purchaser. See *Hartman v. Smyth Sales*, 18 N. J. Misc. 168, 11 A. (2d) 716, holding that rescission for breach of express warranty had not been waived. See, also, *Beuret v. Stahl*, 76 Ind. App. 131, 129 N. E. 407; *Fuller-Warren Co. v. Shurts*, 95 Wis. 606, 70 N. W. 683; and *American Foundry & Furnace Co. v. Board of Education*, 131 Wis. 220, 110 N. W. 403, holding that continued use after notice to remove did not constitute an acceptance of the heating apparatus.

The trial court did not err in determining that there had been no waiver of the rescission.

The judgment is affirmed. The thirty days time therein given to appellant in which to remove its property from respondent's premises shall begin to run on the day the remittitur goes down.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.